Dickerson vs. The State.

DICKERSON vs. THE STATE.

*November 13, 1879 — February 3, 1880.*

CRIMINAL LAW AND PRACTICE: EVIDENCE: INSTRUCTIONS: NEW TRIAL.
(1) *Admission of defendant's testimony on examination of another person charged with same crime.* (2) *An instruction construed.* (3) *An instruction held not injurious to defendant.* (4) *Refusal of new trial sustained, on the evidence.*

1. Upon an information charging the accused, in separate counts, with murder, and with being an accessary thereto, there was no error in admitting in evidence against him testimony given by him as a witness for the state, while under arrest upon suspicion of having committed said crimes, upon the examination of another person accused of the same murder; there being no reason for believing that such testimony was not entirely voluntary.

2. The court instructed the jury as follows, in reference to the accused: "By his testimony he charges the murder upon the wife of the victim. In so doing, has he kept back and concealed what would, if divulged, implicate himself in the commission of the deed, or show that he aided and assisted the woman in its commission? Has he told the whole truth in respect to the death of N.? Has he satisfied you that the woman, alone and unaided, perpetrated the crime? If you are satisfied that he has not told the whole truth in respect to the death of N., that he has kept back and concealed important facts and circumstances connected with such death; if, from the nature of things, you are satisfied, from the testimony that you regard as reliable, that something must have been done in taking the life of N., other than what he has stated: what does such testimony justify you in believing has been suppressed by the defendant? And does what has been suppressed implicate him as aiding and assisting in the commission of the deed, and how? These and like questions are important for your consideration in determining whether the defendant be or be not guilty." *Held,* not liable to the objection that it left the jury to find defendant guilty upon *conjecture,* or otherwise than *upon the evidence.*

3. An instruction that the jury should find the accused "guilty of murder in the first degree, or not guilty, according as they should find the fact," even if understood as requiring them to acquit him entirely in case they should not find him guilty of murder in the first degree, *held* to contain no error *injurious to the defendant*.

4. This court is of opinion that there was no error in refusing to grant a new trial on the ground that the verdict against the accused was contrary to the evidence.

ERROR to the Circuit Court for *Rock* County.

*A. Hyatt Smith*, for the plaintiff in error.

The *Attorney General*, for the state.

COLE, J. At the April term of the circuit court for Rock county, 1879, the plaintiff in error was put upon trial on an information charging him, in apt words, in one count with the murder of one George Mack; and in another count with being an accessary before the fact to such murder, committed by Belinda Mack. On the trial, the prosecution, among other witnesses, called R. D. Whitford, who, upon being sworn, among other things testified that he was present at the examination of Belinda Mack, at Beloit, in July, 1878, on the charge of the murder of her husband, George Mack, and took minutes of the testimony given on such examination, for the district attorney; and that the plaintiff in error was sworn and examined as a witness on behalf of the state. The witness Whitford was then asked to state the testimony which the plaintiff in error gave on that occasion in relation to his being sick at the house of Mack; and also to state the testimony which the plaintiff in error gave in regard to a conversation which he had with Mrs. Mack during the time he was sick. The counsel for the plaintiff in error objected to the admission in evidence, on the trial of this cause, of the testimony which was given by him on the examination of Belinda Mack on the charge of the murder of her husband, because or for the reason that the plaintiff in error was then under arrest and in charge of the officer at the time of his examination. The ob-

jection was overruled, and the testimony admitted. The first error assigned is this ruling of the circuit court.

The learned counsel for the plaintiff in error insists that the testimony of a party given on the examination while the person is under arrest, as in this case, charged with crime, is never admissible in evidence against him when he is upon trial for the same offense; and he relies upon the cases of *Hendrickson v. The People*, 10 N. Y., 13; *The People v. McMahon*, 15 N. Y., 384; *Teachout v. The People*, 41 N. Y., 13; and *Schoeffler v. The State*, 3 Wis., 823, in support of this position. The question as to whether or not the evidence was admissible is surely so thoroughly and exhaustively discussed, both upon principle and authority, in the above cases, that it seems a mere work of supererogation to attempt to add anything to what is there said. In the first case Hendrickson was called and sworn as a witness upon the coroner's inquest upon the body of his wife. The inquest was held upon the same day the deceased died, and before he was charged with her murder; indeed, before it was ascertained that a murder had been committed. His statements, made before the coroner, of the circumstances attending her death, were held admissible in evidence on the trial of an indictment charging him with her murder. Judge PARKER gave the prevailing opinion, which is marked by great learning and most vigorous reasoning. This case was decided in April, 1854.

The case of *The People v. McMahon* was decided in June, 1857. The head note states with sufficient accuracy the scope and effect of the decision. It is as follows: "The prisoner was arrested by a constable, without warrant, on suspicion of being the murderer of his wife. The constable took him before the coroner, who was holding an inquest on the body of the murdered woman, by whom he was sworn and examined as a witness. *Held*, that his evidence, as given before the coroner, was not admissible on the prisoner's trial for the murder." Judge SELDEN gave the opinion of the court, and

reiterated the views stated by him in his dissenting opinion in the Hendrickson case. If his views were to be accepted as the opinion of the court, it is very manifest that the rule laid down in the previous case is greatly qualified, if not directly overthrown. So the decision stood when *Teachout v. The People* came before the court in 1869. In this case it was decided that the statements made by the prisoner under oath, at a coroner's inquest upon the body of his wife, are admissible against him upon his trial for the murder, although he knew at the time he was sworn that it was suspected the deceased was poisoned, and that he himself would probably be arrested for the crime, and was informed by the coroner that rumor implicated him, and that he had a right to refuse to testify. Judge WOODRUFF gives the opinion, in which, after reviewing and criticising the views of Judge SELDEN as expressed in the McMahon case, he finally reaches the conclusion that the decision in *Hendrickson v. The People* "should be regarded as settling the question raised in this case, and that no error in law was committed in permitting the declarations of the prisoner, made before the coroner, to go to the jury for their consideration."

The case of *Schoeffler v. The State* was decided at the June term, 1854. It is quite similar in its facts to the case of Hendrickson, except that the deposition was taken after suspicion had attached to the defendant in the neighborhood. The decision in the Hendrickson case is referred to by Mr. Justice·SMITH with strong approval, and the doctrine of that case was adopted as establishing the correct rule on the subject.

In the light of these authorities we are inclined to the opinion that the ruling of the court below admitting the testimony was correct. It will be noticed that the plaintiff in error was examined as a witness in a prosecution against Belinda Mack. There is no pretense for saying that·his testimony on that examination was not entirely voluntary in every legal sense. It is quite true he was himself at the time actually under arrest —

perhaps resting under a strong suspicion of having had some agency in the murder. He might have refused to testify on that examination, on the ground that his answers would tend to criminate himself. But if he was willing to give his evidence and did voluntarily testify, we cannot see why, upon principle and within the reasoning of the above authorities, his testimony may not be subsequently used against him. There is another consideration which tends to strengthen this conclusion. In this state, by statute, in all criminal trials and prosecutions, the accused, if he so desires, may be a witness for himself. Now suppose the plaintiff in error should obtain a new trial, and on that trial should give testimony materially different from that which he gave on the first: could there be a doubt that, in that case, his testimony on the first trial might be given in evidence on the second, for the purpose of affecting his credibility?

Mr. Greenleaf states the rule as follows: "But where the prisoner, having been examined as a witness in a prosecution against another person, answered questions to which he might have demurred as tending to criminate himself, and which, therefore, he was not bound to answer, his answers are deemed voluntary, and, as such, may be subsequently used against himself for all purposes; though, where his answers are compulsory, and under the peril of punishment for contempt, they are not received." 1 Greenleaf's Ev., § 225. There is no ground for claiming, as it appears to us, that the testimony given by the plaintiff in error, on the prosecution against Mrs. Mack, was compulsory, or was procured through some threat or promise which could have influenced him in giving his testimony. The officer who had the plaintiff in error in custody at the lock-up, says that he had this conversation with him: "He (the plaintiff in error) told me that he didn't have anything to do with it. He got kind of afraid they were going to lynch him. I told him if he hadn't anything to do with it, he need not be afraid." This certainly does not show that there was

any inducement or threat held out to the plaintiff in error to make him testify on that occasion. As a matter of course, if his testimony was properly received, there was no error in the ruling of the court refusing to strike it out, which is the second error assigned.

The next exception is taken to this charge of the court: "By his testimony, he charges the murder upon the wife of the victim. In so doing, has he kept back and concealed what would, if divulged, implicate himself in the commission of the deed, or show that he aided and assisted the woman in its commission? Has he told the whole truth in respect to the death of Mack? Has he satisfied you that the woman, alone and unaided, perpetrated the crime? If satisfied that he has not told all the truth in respect to the death of Mack, that he has kept back and concealed important facts and circumstances connected with such death; if, from the nature of things, you are satisfied, from the testimony that you regard as reliable, that something must have been done in taking the life of Mack, other or different from what he has stated — what does such testimony justify you in believing has been suppressed by the defendant? And does what has been suppressed implicate him as aiding and assisting in the commission of the deed, and how? These and like questions are important for your consideration in determining whether the defendant be or be not guilty." The criticism made upon this charge is, that it was equivalent to telling the jury that they might, by conjecture or surmise, supply any fact or missing link in the chain of evidence offered to convict the plaintiff in error of the crime of which he was charged, and were not bound to find a verdict solely on the evidence in the case. But we do not think the charge is fairly open to any such criticism. The jury were, in effect, told that they must be satisfied, from the testimony in the case which they regarded as reliable, that the plaintiff in error aided and assisted in the commission of the murder. The jury could not have sup-

posed they were at liberty to look outside of the evidence in making up their verdict.

The court further charged the jury: "Your verdict will be guilty of murder in the first degree, or not guilty, according as you shall find the fact." This was excepted to on the part of the plaintiff in error.

It is not very obvious to our minds how the plaintiff in error could have been prejudiced by this charge. The jury were told that they must find him actually guilty of murder in the first degree, or acquit him. It must be presumed the jury were properly directed upon the law as to what facts must be established before they could convict him of murder in the first degree. If they did not find, upon the evidence, that he was guilty of that crime, then they must acquit, though there were facts which showed that he was guilty of a lesser degree of homicide. This is the purport of the instruction, and is in favor of the plaintiff in error.

The only other error assigned is in overruling the motion for a new trial because the verdict was contrary to the evidence. We have not read all the manuscript bill of exceptions, which is very voluminous, but we have looked into it sufficiently far to be able to say that there was no error in refusing to grant a new trial on the ground stated.

*By the Court.* — The judgment of the circuit court is affirmed.