Fertig vs. The State.

FERTIG, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 28 — June 23, 1898.*

*Criminal law and practice: Murder: Evidence: Conversations: Arguments of counsel: Instructions to jury: Immaterial errors: "Unnecessary killing" in resisting unlawful act.*

1. The rule that all parts of a conversation, in substance at least, relating to a subject in controversy, must be produced in evidence, or all excluded, is not violated by permitting a person who can remember the particular language or the substance of it, relating to the fact in issue or the evidentiary fact sought to be established, to testify to such part, or by permitting part of the conversation to be testified to by one witness and part by another, if the portions together show, with reasonable distinctness, the bearing of the conversation on the fact in controversy.

2. It does not transcend the bounds of legitimate argument in a criminal case, for the district attorney, reasoning from the evidence in the case, to say that the accused is guilty of the offense charged. Within the record, the field of legitimate argument is broad enough to permit the prosecuting attorney to say, with the utmost freedom, what the evidence tends to prove, and that it convinces him, and should convince the jurors, of the fact in issue.

3. Where evidence strongly tends to prove the fact of guilt, it is not reversible error for the prosecuting attorney to assume the truth of such evidence, and say from it that the accused is what such evidence tends to establish in regard to guilt.

4. It is not error to allow the reading in evidence, by consent, in a criminal case, of unauthenticated minutes of the testimony of the accused given on a former trial for the same offense.

Fertig vs. The State.

5.  A general instruction on the subject of murder in the first degree, with which the accused was charged, and which the evidence tended to establish, having been given, it was not reversible error to not instruct on lesser degrees of homicide, as to which there was no request for instructions.

6.  If there is evidence tending to prove the highest offense of criminal homicide, and yet evidence which would warrant a finding of some lesser degree, an instruction that the jury must find the defendant guilty of such highest degree, or render a verdict of not guilty, is favorable to the accused, not prejudicial.

7.  The statute making the unnecessary killing of another, while resisting the attempt of such other to commit any felony or other unlawful act, or after such attempt shall have failed, manslaughter in the second degree, does not include the intentional killing of such other with a deadly weapon on account of a mere trespass to property rights, or the intentional killing under circumstances where resisting the act of such other would be unlawful.

8.  Where evidence, under the most favorable view that can be taken of it in favor of the accused, does not support any reasonable theory of guilt of a degree of felonious homicide other than murder in the first degree, the court is not bound, even on request, to instruct the jury in respect to lesser degrees.

9.  Where the evidence strongly tends to establish murder in the first degree, or no offense of felonious homicide, the court may properly instruct the jury that they should find the accused guilty in such first degree or render a verdict of not guilty.

    [Syllabus by MARSHALL, J.]

ERROR to review a judgment of the circuit court for Dunn county: W. F. BAILEY, Judge. *Affirmed.*

Error to review a judgment rendered on a conviction for the crime of murder in the first degree. The facts which are undisputed, or which the evidence tends to prove, are that there was a dispute existing between *John W. Fertig,* plaintiff in error, and William Spaulding, relative to the right of the latter to take and remove some wood from a wood lot belonging to the former, Spaulding claiming that *Fertig* turned the wood out to him in settlement of a running account between them, which *Fertig* denied, and notified Spaulding not to remove the wood till settlement of

their matters, particularly a dispute as to whether the latter's sheep had been in and damaged *Fertig's* grain; that, notwithstanding such notification, William Spaulding sent his brother Robert and a hired man, Albert Holstrom, each with a span of horses and wagon, after some of the wood, and while they were executing such direction, William called at *Fertig's* house, about twenty rods from the wood lot, and informed Mrs. Fertig of the facts, her husband being away from home; that she immediately went to where her husband was working, and informed him of what William Spaulding said, whereupon he immediately proceeded to the wood lot, but finding that the men had loaded their wagons and departed, he went to his house, took and loaded his gun, and armed with it, hurried across the country in a direction to intercept the men on the road; that he reached the road, found that the teams had not passed, proceeded thereon till he met Spaulding, who was ahead, Holstrom being some distance back and out of sight, and there fatally shot Spaulding, the ball entering his body a little below the breast bone and taking a course a little downward and to the right. There was also evidence tending to show that the shooting was done while *Fertig* stood behind a tree, a little on one side of the road, the ground at that point being a little higher than where the deceased was when he received the fatal shot.   There was little, if any, dispute but that the deceased, when shot, was driving along the road, sitting on the load of wood with his feet hanging down in front.   The evidence further tended to show that the course of the bullet was consistent with the location of *Fertig* at the tree and the deceased on his load of wood, as before stated.

The evidence further tended to show that after the homicide, *Fertig* proceeded up the road till he met Holstrom, who testified that the accused then stated to him that the wood was stolen; that he tried to stop Spaulding, when the latter picked up a stick of wood to strike the accused over the head

with, and thereupon that he shot Spaulding before he, the accused, could think; and that after making such statement, he bade Holstrom good-by, saying: "You will never see me again," and passed on, and Holstrom proceeded to the scene of the homicide, where he found the body of Spaulding lying on the side of the road. The proof of what *Fertig* stated to Holstrom about the homicide, was put in as a part of the state's case. There was considerable evidence tending to show that *Fertig*, on several occasions before the homicide, exhibited much feeling against William Spaulding in regard to the wood, and threatened to shoot the first man that tried to take it; and there was also evidence to the effect that the accused stated to the sheriff, and to Mr. Hancock, an attorney, that he supposed he had killed William Spaulding.

*Fertig* testified in his own behalf, denying the evidence of the several witnesses as to his threatening to shoot the first man that attempted to remove the wood, and denied that he made any statement to the sheriff or Hancock in regard to having supposed he killed William Spaulding; and denied that he stated to Holstrom, shortly after the homicide, the circumstances of it as related by Holstrom. He further testified in his own behalf that when he met Robert he said, "Stop, I want to see you about the wood;" that Robert did not stop or speak, and as the team was about to pass the accused, he stepped up to them and turned, and reached out to take hold of the reins, throwing his gun across his left arm, when it was discharged; that the team passed on about two or three rods before he knew Spaulding was hurt, when he saw the blood from the breast; that Spaulding fell from the wood, striking on his head; then, about as the hind wheel was passing him, he tipped towards and against it, which carried his feet forward, so that when the wagon left him he lay with his head toward *Fertig*. The testimony of the accused, giving a somewhat different relation of the homicide, upon two former trials, was read from the report-

er's notes by consent, without such notes being in any way verified.

There were some exceptions to the rulings on the objections to the remarks of counsel, also to the reception of evidence of witnesses of statements made by the accused before the homicide, upon the ground that they could not remember all of the conversations; also exceptions to the refusal of the court to charge the jury on the subject of murder in the second degree, and to the instructions of the court to the effect that defendant, on the evidence, was guilty of murder in the first degree, or not guilty and should be acquitted. The jury found the accused guilty of murder in the first degree, and proper proceedings were taken to preserve for review the exceptions referred to.

*Spencer Haven*, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General* and *John L. Erdall*, first assistant attorney general, and oral argument by *Mr. Erdall*.

MARSHALL, J.   The errors assigned on behalf of plaintiff in error will be considered in their order and are as follows: (1) The refusal of the court to strike out evidence of conversations damaging to the accused where a witness could not give all the conversation, or the substance of it; (2) permitting the prosecuting attorney to use improper language, detrimental to the accused, in closing his argument to the jury; (3) permitting reading from the reporter's minutes, the testimony of the accused on former trials for the same offense, without any verification of the same; (4) instructing the jury that the defendant was guilty of murder in the first degree or not guilty; (5) refusing to submit to the jury the question of manslaughter in the second degree as requested.

1. The rule that all parts of a conversation, bearing on the subject in controversy, must be taken together, and that if

the whole of it, in substance at least, cannot be given, so that its bearing on such controversy, from the standpoint of the party offering it, can be established, the whole shall be excluded, is familiar; but that does not require that a witness testifying to a conversation shall remember it all, either literally or in substance, but only that he shall remember that part relative to the controversy. If a witness can testify to a part of a conversation, sufficiently complete of itself to show its bearing on the fact in issue, or some evidentiary fact in the case, that is sufficient, though other things were said, which the opposite party may call out on cross-examination, so far as they in any way explain or modify that part testified to in chief; and though the other party to the conversation may be called and his version of it be given. The rule does not go so far as to exclude damaging admissions or declarations made in a conversation, because all said cannot be remembered. All the conversation, or the substance of it, which shows the bearing of the damaging statement as to the fact in issue, or the evidentiary fact sought to be established, must be given or all excluded; but that being satisfied, the evidence is admissible.

Viewing the alleged objectionable evidence in the light of the foregoing, no reason is perceived for holding that error was committed in refusing to strike it out on motion of counsel for accused. Moreover, if that testified to by any one witness was not sufficiently complete in itself to be admissible, it was made so by the testimony of others to the same conversation, the testimony of all showing substantially the whole conversation. It is not necessary that all the parts of a conversation be testified to by one witness to make any part of it admissible; part may be established by one and part by another, so as to render the whole admissible, if, taking the parts together, they show what was said with reasonable distinctness, bearing on the fact in dispute, or any fact tending to establish the fact in issue by reason-

Fertig vs. The State.

able inference, under the established rules governing the subject. *People v. Ah Wee*, 48 Cal. 236. As said, in effect, by Mr. Justice Taylor in *Mack v. State*, 48 Wis. 271, each party may give his own version of a conversation, and if one gives a part sufficiently complete to be material to the case, the other has a right to prove the balance. That, of course, he may do by cross-examination or by other witnesses. Here the evidentiary fact sought to be established by the prosecution was that the accused had ill will towards William Spaulding, and threatened to kill him or any one who attempted to take the wood, which was the subject of controversy leading to the homicide. That part of the conversation showing such facts was remembered in substance, and testified to distinctly and positively, and was properly received.

2. The prosecuting attorney was permitted to say, in closing the case to the jury, replying to remarks of the attorney for the accused regarding the testimony of William Spaulding: "What would counsel have him do? Come here and shower bouquets on the assassin of his brother? Crown him with a wreath of laurels?" And also permitting the district attorney to say, in substance, that there was murder in the heart of the accused as he proceeded to and effected the homicide,— that he had murder in his heart, in his eye, and in his brain; that he stood where the tracks indicated to get a good aim; the object of his vengeance was coming, sitting on the wood in full view; he (the accused) was a crack shot and knew it; he cocked his gun, drew the bead on the deceased, and the deed was done, and a son and brother was sent to his Maker without a moment's warning, by the act of an assassin,— as vile an act as ever happened on earth; so foul that it would be worthy of the vicegerent of the monarch of hell. That such language, with the earnestness with which we may well assume the words were uttered in the closing moments of an important trial, was highly calculated to carry

the jury along the line of thought which it indicated, that is, that the accused was guilty, cannot be doubted; but whether it was outside the case, or tended unfairly to influence the jury, and to swerve them from the duty of deciding the case on the evidence, and that alone, in the light of the law governing the subject, is quite another question. So long as counsel did not depart from the evidence produced, but confined his argument to reasoning from that up to the conclusion that it established guilt, however eloquently and persuasively he may have handled his subject, it was not only legitimate but commendable. Within the record in this regard, the field is broad, and the license of the advocate, and duty as well, permits him to say with the utmost freedom what the evidence tends to prove, and that it convinces him, and should convince the jurors as well, of the fact in issue. As said in *People v. Hess*, 85 Mich. 128: "To deny to a prosecuting officer that privilege, would be to deny him the right to place before the jury the logic of the testimony which leads his mind to the inevitable conclusion of guilt, and which he has a right to presume will lead them to the same conclusion, if they view it as he does." That does not mean that a prosecuting officer may express his opinion independent of the evidence that the accused is guilty, or his opinion of guilt, which may or may not be based on the evidence, but that he may state from the record, upon which the issue is to be submitted to the jury, that it establishes guilt. To do the latter is but to state the evidence, draw inferences therefrom, and proceed, reasoning naturally from step to step up to the logical conclusion, and state it, all being legitimate parts of legitimate argument; and if the introduction and discussion lead to such conclusion, though stated with great earnestness and with strong feeling and conviction, so long as the advocate keeps within the record, the accused has no legitimate ground of complaint. That appears to be what was done in this case. There is nothing to indicate that the district

attorney asserted that the accused was a murderer or assassin, except with reference to the offense for which he was being tried, and as he drew that conclusion from the evidence. It was the inevitable conclusion of the line of argument pursued by the prosecutor, from the evidence, and could not have been otherwise understood by the jury. It is quite unlike *Scott v. State,* 91 Wis. 552, where the district attorney spoke of the accused as a thief, not with reference to the offense for which he was on trial, but as a fact tending to establish guilt of that offense.

As to remarks made in reply to those of the attorney for plaintiff in error, regarding William Spaulding, it is sufficient to say that in using the term " assassin " it is quite clear that the district attorney was speaking from the evidence in the case as he viewed it, and that the jury must have so understood him. He had a right to assume that the evidence produced on the part of the state was true, and that it established what it tended to establish, and that it pointed most strongly to the guilt of the accused as charged. To address the jury accordingly can hardly be said to have been such an abuse of the privilege of counsel for the state, and so prejudicial to the accused, as to warrant a reversal of the judgment. True, harsh and violent language should not be used by counsel, certainly in criminal prosecutions, though whether language be harsh and abusive depends largely upon the evidence in the case; but in the absence of some manifest abuse of the privilege of legitimate argument, clearly working prejudice to the accused, it cannot be considered reversible error. In *Spahn v. People,* 137 Ill. 538, where the evidence on the part of the state established the guilt of the accused, the court held that, assuming the truthfulness of the people's evidence, which assumption the prosecuting attorney had a right to make on the argument, it was not such an abuse of the privilege of counsel in argument to the jury, to speak of the accused, with reference to the offense for

which they were on trial, as robbers and burglars, as to work a reversal on that ground.   So we may say it was not an abuse of the rules of legitimate argument, in this case, to speak of the accused, from the evidence of the state, as a murderer.

3. It is sufficient to say of the contention that it was error to permit the reading in evidence of the unverified, unauthenticated stenographer's minutes of the evidence of the accused, given on former trials, that no objection was made to it; on the contrary it seems to have been consented to.

4. No request was made to submit the question of murder in the second degree, so no error can be successfully assigned in that regard.   *Odette v. State*, 90 Wis. 258.   That seems to be a sufficient answer to the suggestion that the trial court should have instructed the jury respecting that degree of criminal homicide.   Moreover, the instruction given to the effect that the defendant was guilty of murder in the first degree, or not guilty, was favorable, rather than prejudicial, to the accused, if there was evidence on which he might have been convicted of the lesser offense.   The jury having been properly instructed as to the essential elements of murder in the first degree, an instruction that the accused was guilty of that offense, or not guilty of any, was equivalent to a direction to the jury to acquit him, unless they found that the highest offense of criminal homicide was established by the evidence.   It follows that, if there was error in not submitting murder in the second degree, it was not prejudicial, hence not reversible error.   *Dickerson v. State*, 48 Wis. 288; *Winn v. State*, 82 Wis. 571; *Odette v. State*, supra.

5. The contention that the trial court erred in not instructing the jury respecting manslaughter in the second degree, as requested, is divided into, (a) If the accused unnecessarily killed Spaulding while endeavoring to take from his possession wood which he wrongfully detained from the accused, would that warrant a conviction of manslaughter in the sec-

ond degree? and (b) Was the evidence sufficient to warrant a reasonable belief that the homicide was unnecessarily perpetrated while the accused was resisting an attempt on the part of the deceased to assault the accused with a stick of wood?

(a) Both of the questions suggested in the foregoing refer to the statutory offense of manslaughter created in the following language: "Any person who shall unnecessarily kill another, either while resisting the attempt by such other person to commit any felony or to do any other unlawful act, or after such attempt shall have failed, shall be deemed guilty of manslaughter in the second degree." It is urged on behalf of the plaintiff in error that the deceased was committing an unlawful act within the meaning of the statute, in that he would not give up, but was persisting in retaining, the wood, and that there was evidence from which a jury might reasonably say the act of killing was unnecessarily done in resisting such unlawful act. The weakness of this contention is that there was no unlawful act on the part of the deceased, within the meaning of the statute, in process of being committed, or which had been attempted and failed, at the time of the homicide. Looking at the case most favorably for the accused, if any unlawful act was committed by Robert Spaulding at all, it was a mere trespass, and fully consummated when the wood was removed from the wood lot. At the time he met *Fertig* he was lawfully traveling on the highway and could not be lawfully dispossessed of the wood by force. The mere retention of the wood after the trespass was committed and the deceased had left the wood lot, was not unlawful in the sense that the accused had a right to resist it; and rightful, lawful resistance is what the statute means, excessive and unnecessary force causing death in making such rightful resistance, or after such resistance would have been rightful, being the element that renders the homicide criminal in the degree named in the

statute; and it does not include killing with a deadly weapon, intentionally, because of any mere trespass to property rights. *People v. Divine*, 1 Edm. Sel. Cas. 594.

(b) The only evidence of any act on the part of the deceased, warranting the accused acting in self-defense and resisting such act, is Holstrom's evidence as to the accused having stated that the deceased picked up a stick of wood to strike him. If a jury could say, on the most favorable view that could reasonably be taken of that evidence, that the deceased was committing an assault upon *Fertig*, and that the homicide took place in resisting such assault, then it was error not to instruct on the subject of manslaughter in the second degree. There would then have been the element of unlawful act, rightful resistance of such unlawful act on the part of the accused, and the unnecessary and excessive use of force in making such resistance, resulting in death, necessary to manslaughter in the second degree. But the evidence does not warrant an inference that the deceased assaulted *Fertig*. The statement was that the deceased picked up a stick of wood to strike, not that he attempted to strike him, or that any act was done calling for defense. There is nothing in the evidence, taking it most strongly for plaintiff in error, indicating more than that the deceased picked up a stick of wood. There is nothing to show that he raised the stick of wood and attempted to strike, or was in a situation to have effected an attempt of that kind, so we may safely say that, taking the evidence as establishing what it tends to establish, Spaulding merely picked up a stick of wood to strike with, when the accused tried to stop the team. Certainly, that was not an unlawful assault, and not an unlawful act warranting any resistance at all upon the part of the accused. But if it were otherwise, the theory that any such thing occurred is contrary to *Fertig's* relation of the homicide on previous trials, as well as on the last trial, and the whole theory of the defense, from first to last,

which was that the shooting was accidental. So, looking at the evidence as a whole, and the attitude of the defense at the close of the trial, when the court was called upon to submit the case to the jury, there was no room for a reasonable belief that the deceased assaulted or attempted to assault *Fertig*. All probabilities are so against such a theory as to leave no room for a reasonable doubt on the question. The statement of the accused to Holstrom, as testified to by the latter, was not only denied by the accused, but the fact itself was denied, and the theory that any such thing took place was rebutted and disproved as completely, almost, as human testimony could do it.

It is only where there is evidence tending to establish a particular offense of criminal homicide that the trial court is required to instruct the jury in regard to it. *Dickerson v. State*, 48 Wis. 288; *Knoll v. State*, 55 Wis. 249; *Terrill v. State*, 95 Wis. 276; 9 Am. & Eng. Ency. of Law, 741, and notes. When, on the evidence, the accused is clearly guilty of murder in the first degree, or not guilty, it is not only the right, but the duty, of the court to so instruct the jury. *Dickerson v. State, supra; State v. Kilgore,* 70 Mo. 546; *State v. Stoeckli*, 71 Mo. 559.

What has been said disposes of all questions submitted for our consideration without discovering any error in the record. The case appears to have been fairly tried, submitted to the jury by instructions not only free from all reversible error, but free from reasonable criticism, and the verdict appears to have been fully justified by the evidence.

*By the Court.*— The judgment is affirmed.