PATZER, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 26—June 17, 1914.*

*Criminal law: Homicide: Self-defense: Heat of passion: Degrees to be submitted to jury: Harmless error.*

1. Although a defendant seeks to justify a homicide on the ground of self-defense, he may nevertheless, if the evidence tends to show that the killing was done in a heat of passion, be entitled

to have submitted to the jury the questions whether it was man-
slaughter in the second degree under sec. 4350, Stats., or man-
slaughter in the third degree under sec. 4354, Stats.  Language
to the contrary in *Bradley v. State*, 142 Wis. 137, 141, limited
to the particular case then under consideration.

2. The refusal in this case to submit those questions to the jury
was not prejudicial error, although defendant was convicted of
a higher degree of criminal homicide, the jury having been
instructed that if they did not believe the defendant guilty of
either of the degrees submitted to them they must return a ver-
dict of not guilty.

ERROR to review a judgment of the circuit court for Wau-
paca county: BYRON B. PARK, Circuit Judge.   *Affirmed.*

The plaintiff in error, *Caroline Patzer,* hereinafter called
the defendant, was tried upon an information charging her
with murder in the first degree for killing her husband, Al-
bert Patzer, on the 7th day of January, 1913.   *Caroline Pat-
zer* was fifty-five years of age and the wife of Albert Patzer,
the deceased, who was sixty-five years of age.

The evidence showed that they had quarreled frequently
since their marriage thirty-nine years before and that these
quarrels were accompanied by threats of killing one another.
The quarrel which led up to the alleged homicide started on
Saturday, January 4th, at the village of Manawa, Waupaca
county, whither the parties had gone by team to take their
son to a train.   The afternoon of that day the defendant
went into a saloon where her husband was and asked him to
come with her to go home.   He refused.   She got the team
and drove to the saloon, and the deceased then came out and
accused her of stealing his horses.   He was intoxicated to a
degree which rendered him unable to get into the rig alone,
and the village constable, who was present, helped him to his
seat and they drove home, quarreling most of the way.   The
quarrel over the horses continued into the following days.
Tuesday noon the defendant called her husband to come to
dinner and they ate their meal in silence.   They were alone
in the house.   She testified that they had finished eating, and

while they were still seated at the table her husband started to quarrel about her stealing the team the Saturday before; that the quarrel grew violent and that he threatened to "cut her guts out with a knife," reached for the knife which was in his pocket and attempted to open it; that she tried to take it from him; that he then took hold of her skirt with one hand and in his other had hold of the knife and tried to open it with his teeth; that she reached to the wood box behind her, secured a stick of wood, and struck him over the eye; that the knife fell to the floor when she first hit him and he turned his head away from her; that she then struck him over the ear and again on the back of the head; that she then picked him up and stated: "Pa, I guess we been fighting too bad;" that she then helped him into the other room to a chair and went back to the kitchen, burned the stick of wood, wiped up the blood, and went to the neighbors and told them that a stranger had tried to kill her husband. She later made a confession and was tried and convicted of murder in the third degree.

The court instructed the jury and submitted to them for determination whether or not she was guilty of murder in the first degree, murder in the second degree, murder in the third degree, manslaughter in the first degree, or manslaughter in the second degree, or whether the homicide was justifiable and excusable, and that if she was not guilty of any of the above mentioned offenses she was then entitled to a verdict of not guilty. The jury found the defendant guilty of murder in the third degree. She was sentenced to nine years' imprisonment and immediately confined in the state prison. Motion for a new trial was made and denied. The defendant prosecutes a writ of error to review the judgment entered by the circuit court.

For the plaintiff in error there was a brief by *Wm. N. Martin* and *Wm. E. Fisher,* and oral argument by *Mr. Fisher.*

For the defendant in error there was a brief by the *At-*

*torney General, J. E. Messerschmidt,* assistant attorney general, and *Llewellyn Cole,* district attorney of Waupaca county, and oral argument by *Mr. Cole* and *Mr. Messerschmidt.*

Siebecker, J.   The only question presented for review is: Did the court err .in refusing to submit to the jury the inquiries whether or not the defendant was guilty of manslaughter in the second degree as defined by sec. 4350, Stats., and of manslaughter in the third degree as defined by sec. 4354, Stats.   The distinguishing characteristic of the offenses is that the acts charged are committed in the heat of passion.   The court rejected the written request of the defendant to submit these issues to the jury and denied a motion for a new trial upon the ground that the evidence did not permit of the inference that the homicide was committed in the heat of passion.   The court stated in its opinion in ruling on this motion that it was a debatable question "whether, when self-defense is set up and relied upon, the defendant can ask and require the court to submit the two degrees of manslaughter . . ." defined in the foregoing sections.   This conclusion was based on the following statement in the opinion of this court in the case of *Bradley v. State,* 142 Wis. 137, 141, 124 N. W. 1024.   In discussing the applicability of the evidence in that case as to these offenses it was said: "This section [4354] ·is not intended to apply to a case where the accused justifies the homicide as one committed in self-defense."   It is manifest that a person acting in self-defense could be aroused to a state of exasperation, rage, sudden resentment, or terror which would disturb or obscure the actor's reason to such an extent as to overcome and dominate the judgment of an ordinary person and thus make him incapable of forming the intent to kill which characterizes the crime of murder.   An examination of the *Bradley Case* shows that the sentence in the opinion quoted above must be interpreted as expressive of the court's view when

applied to the particular facts in that case, and that when the accused sought to justify the homicide as self-defense upon the grounds there relied upon, sec. 4354, Stats., was not intended to apply. Though the language of this sentence in the opinion of the *Bradley Case* is general in its terms, it is to be restricted in its application to the particular case then under consideration and must not be deemed declaratory of a rule that in all homicide cases where self-defense is invoked the offenses defined in secs. 4350 and 4354 cannot exist.

As we view the case, the errors alleged on account of the court's refusal to submit the case to the jury under secs. 4350 and 4354, Stats., do not prejudicially affect the defendant's rights. Assuming, without deciding, that the evidence presented a proper case calling for submission to the jury of the issues whether or not the defendant was guilty of either of the offenses defined in secs. 4350 and 4354, Stats., did the refusal of the court to do so prejudice her in her legal rights? The court instructed the jury that if they, under the evidence, believed the defendant guilty of either of the offenses defined to them in the instruction, then their verdict must be one of guilty of the offense they found was committed, and if they found none of these offenses had been committed by the defendant then they must return a verdict of not guilty. The defendant was convicted of murder in the third degree. The offenses defined in secs. 4350 and 4354 are of lesser degree than the offense of which the defendant was convicted.

In *Fertig v. State,* 100 Wis. 301, 75 N. W. 960, it was held that an instruction to the jury that they must find the accused guilty of an offense of a higher degree or not guilty, under the evidence which would warrant the finding of an offense of a lesser degree, is not prejudicial because it is favorable to the defendant in that it acquits him of the lesser offense and saves him from being convicted of the lesser crime. In *Winn v. State,* 82 Wis. 571, 579, 52 N. W. 775, the court declares that "The argument against the rule is

based on the assumption that the jury are determined to convict the accused of some crime, and if not allowed to convict him of the crime of which he is proved to be guilty, they will convict him of a greater crime without proof. Such an assumption is a grievous injustice to jurors and a severe arraignment of the institution of trial by jury. We believe the rule above stated to be a sound one and must therefore decline to change it." In the following cases this practice was approved: *Dickerson v. State,* 48 Wis. 288, 4 N. W. 321; *Murphy v. State,* 108 Wis. 111, 83 N. W. 1112; *Hempton v. State,* 111 Wis. 127, 86 N. W. 596; *Weisenbach v. State,* 138 Wis. 152, 119 N. W. 843.

Under the state of the record it must be held that it presents no reversible error.

*By the Court.*—Judgment affirmed.