Meyer, Plaintiff in error, vs. The State, Defendant in error.

*November 18, 1921—February 7, 1922.*

*Homicide: Murder in first degree: Sufficiency of evidence: Argument to jury: Prosecutor characterizing nature of crime.*

1. In a prosecution for murder, evidence conclusively establishing. that the deceased, the wife of the defendant, had met her death by blows upon the head, and that her body was placed in the basement of their home before a fire which destroyed the house had touched the body, together with evidence pointing to a number of more or less suspicious circumstances connected with the conduct of the defendant, is *held* to sustain a conviction of murder in the first degree.

2. Where the accused disclaimed all knowledge of the crime, so that no room was left for any question of accident, heat of passion, or other inadvertence, the defendant was either guilty of murder in the first degree or not guilty.

3. A statement of the district attorney, in arguing to the jury, that "There isn't any of the crimes the Huns have committed that is more atrocious than the crime this man has committed," was not prejudicial error as asserting that the accused was not only guilty, but that he was guilty of a most heinous crime, as the characterization of the crime was a matter upon which minds might well differ.

Error to review a judgment of the circuit court for Jackson county: James Wickham, Judge. *Affirmed.*

The plaintiff in error, hereinafter called the defendant, was convicted of the crime of murder in the first degree on June 15, 1918, and sentenced to life imprisonment. To review such sentence he sued out a writ of error.

*Loren Risk* of Minneapolis, Minnesota, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General* and *J. F. Baker,* assistant attorney general, and oral argument by *Mr. Baker.*

The following opinion was filed December 13, 1921:

Vinje, J.     Defendant, his wife, Margaret, and two boys lived upon a farm in Clark county.   On Thanksgiving eve-

Meyer v. State, 176 Wis. 184.

ning 1918, at about 10 o'clock, some of defendant's neigh-
bors discovered that his house was on fire, and upon reach-
ing it they found him outside making no effort to get into
the bedroom where, upon being questioned, he claimed his
wife was. The house burned down completely, and the
next day, after large quantities of water had been poured
upon the burning débris, the body of his wife was found in
the northeast corner of the basement under about two feet
of burned material and ashes on the basement floor with
nothing under it except a small board that was not burned
to any extent. The upper part of the body was considerably
burned but the lower part was not, showing the body was
in the basement before the fire began. That is further sub-
stantiated by witnesses who saw a hole burned in the bed-
room floor and watched objects fall through it to the base-
ment, but saw no body fall through though they looked for
it. A *post-mortem* showed that her skull had received
three severe blows from some blunt but compact instru-
ment before death, one causing a stellar fracture of the skull
at the occipital bone, one a fracture of the skull on the right
side breaking the bone at the base of the ear, the right eye
socket, and breaking the cheek bone in two places. Any one
of these two blows would cause instant unconsciousness and
certain death. The other blow on the left side of the head
was not so severe though it might cause death. The tissues
around the blows were infiltrated with blood and showed
such an amount of hemorrhage that it was certain they were
inflicted while the heart was still beating and the circulation
of the blood in progress. So it was conclusively established
that she met her death by blows upon the head and that the
body was in the basement before the fire touched it.

Upon the evening in question the defendant's two sons
had gone to a dance and he and his wife had taken one
Woodkey from a place some eight or ten miles away to
their house, which they reached about 9:20. Woodkey left
for his home a short distance away, the wife started for the
house and the defendant for the garage with the car. From

that time till the neighbors came upon discovering the fire the defendant and his wife were alone. He claims he put the car away, went into the kitchen for some warm water to doctor a sick horse, and remained in the barn till a short time before the neighbors came. He thinks he must have dozed for a short time while watching the sick horse. It was fairly well established that there was no sick horse. Among a number of more or less suspicious circumstances were these: He made no effort to get to his wife, who he claimed was in the bedroom. Next day he made no effort to put out the burning débris, and when the neighbors began to pour water over the place where the body lay he asked them to stop because the water would crack and spoil his basement wall. When they continued he stopped the gasoline engine that pumped the water. The valuable papers that had been kept in the house were found in the garage with blood on them. He did not want to notify relatives of her death, and would not talk about the fire unless questioned. A number of his explanations were refuted by the evidence. His theory was that his wife had gone to the basement with a lamp, had fallen, and so the fire was set to the house. But the evidence showed that there was no fire in the basement when the neighbors came. On the other hand, the lower part of the house was filled with sheets of flame without much smoke. It is also a verity established by the *post-mortem* examination that the deceased could not by a fall have received three such serious injuries to the skull. They could not have been self inflicted and could not have been the result of accident, but must have been inflicted by some one other than herself.

Defendant was about fifty years of age and his wife some seven years older. They had not lived very amicably, owing in part, as she had claimed, to his habit of drink, his laziness, and failure to get ahead. They had quite often quarreled about money matters, part of their farm was in

her name, and she had been much opposed to his late purchase of the automobile.

These are some of the salient facts disclosed by the record. We have read all the evidence contained therein because of the insistent claim of defendant's counsel that it did not sustain a conviction.

In passing sentence the trial court sought to elicit from the defendant the fact that perhaps the killing was done in a heat of passion as the result of some quarrel, but the defendant disclaimed any knowledge of the crime, whereupon the court said: "The jury have found you guilty of one of the most brutal crimes that a man can be guilty of. I am fully satisfied on the evidence that they were justified in doing so." A careful reading of the evidence has also satisfied us that the verdict was a just one.

The charge to the jury was full and not only correct in law but very favorable to the defendant in that it emphasized their duty not to convict unless they were satisfied from all the evidence beyond a reasonable doubt that the defendant was guilty. The exceptions taken to it, when considered in connection with the whole charge, have no basis in law and will not be separately treated.

Under the evidence the trial court correctly held that the defendant was either guilty of murder in the first degree or not guilty. If the injuries found upon the body of the deceased were inflicted by him, then the evidence left no room for accident, heat of passion, or other inadvertence. The jury in that case were bound to assume that the defendant intended the probable and natural result of his acts. Such result was death. So the evidence left only two alternatives: guilty as charged or not guilty.

In arguing to the jury the district attorney said: "You have heard about the atrocious crimes committed by the Hun over there, but, gentlemen of the jury, there isn't any of the crimes the Huns have committed that is any more

atrocious than the crime that this man has committed." Exception is taken to this language by the defendant on the ground that it asserts him not only to be guilty but to be guilty of a most heinous crime. The jury well understood that the district attorney's declaration of guilt was based upon the evidence before them, and they were instructed by the court that if they found him guilty such finding must be based upon the evidence. Whether or not the district attorney properly characterized the nature of the crime committed by the defendant, if guilty, is a matter upon which judgments of men may well differ. The district attorney gave them his view of it, and the trial judge gave his view as stated. It cannot be said that the language used by the district attorney constituted prejudicial error.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, without costs, on February 7, 1922.