66    17
76    109

TUCKER, Appellant, vs. FINCH, Sheriff, etc., Respondent.

*March 19 — April 6, 1886.*

FRAUDULENT CONVEYANCE: EVIDENCE: INSTRUCTIONS TO JURY. *(1, 4, 5)*
Conspiracy: Fraudulent combination: Sale of chattels. *(2)* Attorney at law: Privileged communications. *(3)* Receipts as evidence of a consideration paid.

1. When a conspiracy is shown, or is to be shown in the natural order of the testimony, evidence of the conduct, circumstances, or statements of any one of the parties thereto is admissible.

2. An attorney at law may testify to communications made to him by a party who is not and has not been his client.

3. Where it is claimed that a sale of chattels was without consideration and fraudulent as to the vendor's creditors, receipted bills given by the vendor to the vendee do not, of themselves, prove that the latter actually paid the purchase money.

4. The question being whether conveyances of chattels by a debtor to two of his brothers and by them to another brother were fraudulent and void as to creditors, there was no error in instructing the jury

Tucker vs. Finch, Sheriff, etc.

that they might consider the conduct of the parties to such trans-
fers, their dealings and ways of doing business together, and the
fact that they were brothers.

5. Nor was it error to refuse to instruct the jury that if the two broth-
ers to whom the debtor conveyed were the *real owners* of the goods
at the time of the sale by them to the other brother, then the latter
obtained a good title,— without any explanation of the term " real
owners," or qualification as to the *bona fides* of the sale.

APPEAL from the Circuit Court for *Portage* County.

The facts will sufficiently appear from the opinion. There
was a verdict in favor of the defendant, and from the judg-
ment entered thereon the plaintiff appealed.

For the appellant the cause was submitted on the brief of
*G. W. Cate.* To the point that the witness Sanborn should
not have been permitted to state what transpired between
himself and the plaintiff while the plaintiff was seeking his
professional assistance, he cited 1 Greenl. Ev. sec. 241; 1
Wait's Pr. 240; 2 Best on Ev. sec. 581, *n.* 25.

For the respondent there was a brief by *W. J. Turner*,
of counsel, and *Jones & Sanborn*, attorneys, and oral argu-
ment by *Mr. Turner.*

ORTON, J.   There was an attachment issued in the suit of
Baum, Fischer & Co. against the goods of one Henry
Tucker, and levied upon goods in a store at Stevens Point
as the property of said Henry Tucker, December 5, 1883,
by the defendant, as sheriff of Portage county, and the ap-
pellant took said goods from the defendant's possession by
a writ of replevin in this action.   The defendant answered,
alleging substantially that, a short time before, the said
Henry Tucker bought said goods, and many thousand
dollars' worth of other goods, from Baum, Fischer & Co.
and other merchants, for his store in the city of Oshkosh,
on credit and by false and fraudulent representations of
his financial circumstances and solvency; and that soon after
the arrival of said goods they, or a part of them, to the

value of about $6,000, were sent by said Henry to his two brothers, N. & M. Tucker, at Stevens Point, and went into their store at that place, the said N. & M. Tucker having ostensibly purchased them of said Henry; that the said Henry soon thereafter was insolvent, and his goods at Oshkosh were attached by his creditors and said Baum, Fischer & Co., and about that time the said plaintiff, another brother of said Henry, went in great haste to the city of Stevens Point, and ostensibly purchased from his brothers, the said N. and M., said goods; that all of said brothers knew the circumstances of said Henry and the manner in which he had purchased said goods, and fraudulently colluded together, and with said Henry, to defraud his creditors, and that said pretended sales to said N. and M., and by them to the plaintiff, were fictitious and fraudulent, and made with the intent to defraud the creditors of said Henry.

The main facts proved on the trial were as follows: Henry Tucker, being then insolvent, in the fall of 1883 had a store in the city of Oshkosh, in which his brother *Marks*, the plaintiff, had been and was his salesman and clerk, and his brothers N. and M. were pack peddlers from that point through the country. They all lived together in the same family, with a sister to keep house for them. Henry, by false pretenses of his solvency, purchased from Baum, Fischer & Co. and other merchants in Milwaukee and elsewhere, a large stock of goods, ostensibly for his store in Oshkosh, but about the time of their arrival he had established the two brothers N. and M. in business at Stevens Point, and a large portion of said goods, of the value of about $6,000, was shipped to them at that place. As soon as the creditors ascertained the facts, suits in attachment were commenced against Henry, and in the suit of Baum, Fischer & Co. the remnant of the goods at Oshkosh was levied upon. Henry was still insolvent. About this time *Marks Tucker*, the plaintiff, left the store of Henry, and

hastened to Stevens Point, and purchased the stock of N. and M., ostensibly for a sufficient consideration. These brothers, as witnesses, all testified to the *bona fides* of these transactions of sale.

There were numerous other facts bearing upon the question of fraud that need not be here stated, the above statement being sufficient to show the pertinency of the errors assigned. The evidence very clearly shows that this whole scheme of the Tucker brothers was a bold but transparent conspiracy to obtain goods by fraud, and to defraud the creditors of Henry from whom they were obtained by him; and we think that the verdict of the jury for the defendant was amply justified.

The first fourteen exceptions taken on the trial by the appellant related to the conduct, circumstances, or statements of Henry Tucker in respect to these goods. The purpose of the evidence objected to obviously was to show the fraud. The conspiracy between the brothers being shown or to be shown thereafter in the natural order of the testimony, the conduct, circumstances, or statements of any one of them became the proper subject of inquiry by a familiar rule. We think from the close relationship and intimate business relations of these brothers, it might have been reasonably assumed from the start that the plaintiff and N. and M. knew all about the circumstances of Henry and the fraud of his purchase. The testimony was clearly proper. It is claimed by the learned counsel of the appellant that such statements of Henry tended to prejudice the plaintiff. That was quite likely, and for that very reason the evidence was proper; for if the plaintiff was not connected with the fraud of Henry, the statements of Henry could not have prejudiced him. The conversation of Henry with the witness Landaur, and Landaur's letter to him, proved by copy when not produced, were proper evidence under the same rule. The testimony of Mr. Sanborn, one

of the attorneys for the defendant, was not privileged. He was not the attorney of the plaintiff when the matter about which he testified occurred, and had not been. His evidence was clearly proper and professional.[1]

The part of the charge of the court to the jury first excepted to contains five or six independent statements or propositions, and which ones are regarded as specially objectionable cannot be ascertained; but we can find nothing objectionable in any of them. They seem to have fairly stated the evidence and its legal effect. The court did not err in charging the jury that the receipted bills from Henry to N. and M. do not, of themselves, prove that N. and M. actually paid the purchase money therefor, or any of it, but that they might be considered in connection with all the evidence, and such weight given to them as the jury thought they ought to receive in determining whether such payment was in fact made or not. This was certainly giving receipts between those not parties to the suit all the weight they ought to have, if not more. Another exception was to the charge that the jury might consider the conduct of the parties charged, towards, and their dealing with, each other, and their ways of doing business together, and the fact that they were brothers, in judging whether such fraudulent combination existed or not. That seems to have been directly pertinent to the case, and entirely unobjectionable.

Exception was taken to the refusal of the court to instruct the jury that "if N. & M. Tucker were the real owners of the goods at the time of the sale to the plaintiff, then the

---

[1] The testimony of Mr. Sanborn was to the effect that on the day the attachment of Baum, Fischer & Co. was made out, the plaintiff came to his office, together with N. and M. Tucker, and said he wanted Mr. Sanborn to do some work for him quick — to make out a bill of sale of a stock of goods from N. & M. Tucker to him. Mr. Sanborn said he could not do that for him, as he was already engaged on the other side of the business; and the plaintiff thereupon left the office.— REP.

plaintiff obtained a good title." The words "real owners" might mean the *bona fide* owners, or the owners as between themselves, or the *de facto* or apparent owners. It is too general and unlimited a term to be used in such a case, and might be misleading. They might be the real owners, and yet the fraudulent owners. But whatever the meaning of these words is, the instruction would have been erroneous without the qualification of the fraudulent intent of the parties to the sale. The court gave the proper instruction in respect to such real ownership, as follows: "If N. and M. were the real owners of the goods at the time of the sale to the plaintiff, and they in good faith sold, and the plaintiff in good faith bought, the same, paying therefor a valuable consideration, then the plaintiff obtained a good title by such purchase." This made the term "real owner" harmless, and the instruction applicable to the case. The instructions were certainly very full and fair, and we do not think that they are liable to objection. We can find no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 27 N. W. Rep. 819.— REP.

