## THE STATE VS. LEPPERE.

*March 24 — May 27, 1886.*

CRIMINAL LAW AND PRACTICE. *(1) Evidence of good character: Effect: Charge to jury. (2–4) New trial: Doubt in mind of judge: Conduct of jurors in jury-room: Admissions of guilt by witness after trial.*

1. A statement in the charge to the jury that evidence of good character is admitted in criminal cases for the purpose of leading the jury to believe that the accused is not likely to have committed the crime, but where the facts constituting the crime are clearly proved such evidence can have little or no effect, is *held* not to have been error where, taking the whole charge together, the jury were, in effect, told that the case was not one where the facts constituting the crime were clearly proved so as to render evidence of good character of little or no effect, but one where the testimony was contradictory, and hence such evidence should be considered in connection with all the other evidence, and that if they had any reasonable doubt of the defendant's guilt, upon all the facts in the case, including his good character, then he should be acquitted.

2. The trial judge should not set aside a verdict of guilty, which is warranted by the evidence, merely because he might, if a juror, have reached a different conclusion.

3. A verdict cannot be impeached by an affidavit showing admissions of jurymen that they were for a long time divided, a majority being for acquittal, and that one of the jurymen argued in favor of conviction on the ground that the defendant ought not to have been at the place where the crime was committed.

4. A verdict should not be set aside because of affidavits showing that after the trial the affiants heard admissions of guilt from another person who had testified against the defendant at the trial, where the affidavit of such other person is not produced and no reason given for its non-production.

EXCEPTIONS from the Circuit Court for *Brown* County. The case is thus stated by Mr. Justice CASSODAY:

" The defendant was charged with the murder, and also with the manslaughter, of Byron Simpson, in Brown county, September 27, 1885. He was tried at the November term of the circuit court for that county. It was admitted on

the trial that Simpson was killed on the night of September 27, 1885, by the discharge of a loaded gun in or near the door of a shanty near the mouth of the Fox river, in said county. The theory of the prosecution was that the gun was at the time in the hands of the defendant, and was discharged by him with the intention of killing Simpson. The theory of the defense was that at the time the gun was discharged both the defendant and one Helen Fileo had hold of it; that Helen was struggling to gain possession of it for the purpose of discharging it at Simpson and his companions; that the defendant was struggling to wrest it from her and prevent her from shooting; and that during such struggle the gun was either accidentally discharged, or intentionally discharged by Helen alone. There was testimony on the trial tending to support both theories as to the shooting.

" The jury 'returned a verdict whereby they found the defendant guilty of murder in the second degree,' but nothing more. Thereupon, and before sentence, the defendant moved to set aside the verdict, and for a new trial, upon the several grounds stated in the opinion. The court thereupon, and at the same term, overruled the motion; and afterwards, and before the end of the said term, the defendant, being aggrieved thereby, alleged exceptions, which were reduced to writing in a summary mode, and presented to said court before the end of said term and after verdict and before sentence, for allowance, as provided in sec. 4720, R. S., and the judge of said court thereupon certified, in effect, that, after careful examination of said statement and exceptions, he found them to be conformable to the truth of the case, and therefore had allowed and signed the same pursuant to said statute."

. For the plaintiff the cause was submitted on the brief of *H. W. Chynoweth*, Assistant Attorney General. To the point that the charge on the subject of good character was not

erroneous, he cited *Hogan v. State*, 36 Wis. 226; *People v. Donovan*, 4 N. E. Rep. 181.

*H. J. Gerpheide*, of counsel for the defendant, contended, *inter alia*, that if there was in the mind of the trial judge a reasonable doubt as to the defendant's guilt he should have set aside the verdict and granted a new trial. *Sanborn v. Babcock*, 33 Wis. 400; *Williams v. State*, 61 id. 289. In this case the judge had such doubt, but refused to set aside the verdict on the ground that he had no power to do so unless *satisfied* that there was not evidence to convict. See *Boyle v. State*, 61 Wis. 440, 449; *Smith v. Dragert*, id. 222. The evidence of good character should be considered like any other evidence in the case, and the jury should be allowed to give it such weight as, in their judgment, it was entitled to, without comment or intimation on the part of the court. Even in a clear case, where the other evidence may prove the defendant guilty beyond a reasonable doubt, such evidence may, of itself, generate a reasonable doubt in the minds of the jury. Wharton's Crim. Law, secs. 636, 643, 644, 824; Russell on Crimes, secs. 785-6; *Stephens v. People*, 4 Parker's Crim. R. 396; *Remsen v. People*, 43 N. Y. 6; *Stover v. People*, 56 id. 315; 2 Greenl. on Ev. sec. 25; *Remsen v. People*, 57 Barb. 324; *Heine v. Comm.* 91 Pa. St. 145; *Comm. v. Carey*, 2 Brewst. 404; *Jupitz v. People*, 34 Ill. 516; *People v. Ashe*, 44 Cal. 288; *People v. Bell*, 49 id. 485; *People v. Shepardson*, id. 629; *People v. Doggett*, 66 id. 27; *Ackley v. State*, 9 Barb. 609; *State v. Upham*, 38 Me. 261; *People v. Bodine*, 1 Denio, 281–314; *State v. O'Neal*, 7 Ired. Law, 251; 2 Bennett & Heard's L. C. 163; *People v. Mead*, 50 Mich. 228; Dickens' Quart. Sess. (6th ed.), 563; *People v. Garbutt*, 17 Mich. 9; *State v. Henry*, 5 Jones Law, 66; *Kistler v. State*, 54 Ind. 400; *Felix v. State*, 18 Ala. 720; *Dupree v. State*, 33 id. 380; *Harrison v. State*, 37 id. 154; *Hall v. State*, 40 id. 698; *Rex v. Stannard*, 7 Carr. & P. 673; *Armor v. State*, 63 Ala. 173; *State v. Sterrett*, 25 N. W. Rep. 936; *State v.*

*Lindley*, 51 Iowa, 343; *State v. Northrup*, 48 id. 583; 20 Alb. L. J. 43; 50 Ala. 135. Cases seeming to hold the contrary doctrine depend upon peculiar circumstances or do not directly involve the question. See 1 Starkie on Ev. (10th Am. ed.), 75; *State v. Wells*, 1 N. J. Law, 424; *Bennett v. State*, 8 Humph. 118; *Comm. v. Webster*, 5 Cush. 295; *Long v. State*, 11 Fla. 296; *Schaller v. State*, 14 Mo. 502; *Ackley v. People*, 9 Barb. 609; *Harrington v. State*, 19 Ohio St. 264; *State v. Creson*, 38 Mo. 372; Wharton's Crim. Ev. (9th ed.), 66; 1 Phillips on Ev. 469; *U. S. v. Smith*, 2 Bond C. C. 323; *Lowenberg v. People*, 5 Parker's Crim. R. 414; *Rollins v. State*, 62 Ind. 46; *Hogan v. State*, 36 Wis. 226.

CASSODAY, J. 1. Exception is taken because the court charged the jury: " If you find it to be the fact that the gun was accidentally discharged, as testified to by the prisoner, or by the act of Helen Fileo, then you must find the prisoner not guilty." It is said that this instruction " substantially told the jury that the burden of proof as to the defense was on the defendant," whereas the defendant " was entitled to the benefit of every reasonable doubt." But this instruction was more favorable than the one requested by the defendant's counsel in these words: " If the jury find that the gun went off accidentally only, then no crime was committed, and in that case your verdict must be that the defendant is not guilty." The court gave the substance of this instruction as requested, and in addition charged, in effect, that if they found the shooting was " the act of Helen," then they " must find the prisoner not guilty." But the trial court did not leave the jury to infer that the burden of proof as to the defense was on the defendant. On the contrary, they were repeatedly told, in effect, that they could not convict unless convinced of the defendant's guilt beyond all reasonable doubt; and then, as if to remove any possible chance for cavil, the learned judge, towards the

close of his charge, which would naturally be the most impressive, told the jury: "The burden of proof is upon the state to establish by their testimony every essential fact that must exist, as I have explained to you, to warrant a conviction. The law presumes the prisoner to be innocent until he is proved guilty; and the testimony against him must be of such a character as to convince you beyond a reasonable doubt of the existence of all those facts; and not only must such facts as the state must establish to make out its case be established beyond a reasonable doubt, but also, if you have any doubt of the existence of such facts or circumstances as the defendant relies on as a defense, the defendant is entitled to the benefit of the doubt; or, in other words, if, upon the whole case, you have any reasonable doubt as to the prisoner's guilt, you should give him the benefit of that doubt, and find him not guilty." Clearly, there was no ground for the exception.

2. Exception is taken because the court charged the jury: " I do not think there is any testimony in the case showing a case of manslaughter. You must find the prisoner guilty of murder in the first or second degree, or find him not guilty." The court was clearly right in saying that there was no testimony showing a case of manslaughter. It is insisted that it appears from the charge that the killing was either accidental, or by Helen with premeditated design, or by the defendant with premeditated design, and that there is no evidence to support the charge of murder in the second degree. But it appears from the certified statement and exceptions allowed, to which we are confined, that " there was . . . testimony tending to prove the prisoner guilty of the crime of which he was found guilty, and also testimony tending to prove him innocent of the crime." This disposes of that exception.

3. Exception is taken because the court charged the jury that "evidence of good character is admitted in criminal

cases for the purpose of leading the jury to believe that the accused is not likely to have committed the crime. Where the facts constituting the crime *are clearly proved*, such evidence can have *little or no effect.*" This is said to have been error, and against the great weight of authority. The learned counsel for the defendant has made an elaborate argument, and cited numerous authorities, as will appear from his brief, to the effect that, in all cases where evidence of good character is admissible at all, its weight is to be left to the jury without qualification from the court. There is much force in the argument that its admissibility should not, as held by some courts, be restricted to cases where the question of guilt would otherwise be doubtful; for where there is a doubt without such evidence, the prisoner is entitled to an acquittal without such evidence. For, as claimed, the prisoner is entitled to the benefit of such evidence for the purpose of generating a doubt, even where the evidence might otherwise be sufficient to convince the jury of the prisoner's guilt. Whenever such evidence, in connection with all the testimony in the case, is sufficient to generate a doubt, then the prisoner is entitled to the benefit of it, regardless of whether such other evidence on the part of the state is direct or circumstantial. The want of accord among the authorities seems to have been the result of an attempt to lay down a general rule which should be applicable to all cases, and perhaps, at times, a failure to appreciate the nature of such testimony. It is certainly possible for a person of previous good reputation and character to commit a crime. Numerous instances might be cited from "Sacred Writ" as well as adjudged cases. So, it is possible for a person of previous bad reputation and character to refrain from committing a given crime. The good or bad reputation and character is by no means conclusive of guilt or innocence, but merely a fact from which, in connection with other evidence, guilt or in-

nocence may be inferred or presumed. But where such other evidence is undisputed, and so clear, positive, and direct as to repel every such inference or presumption, then, in such a case, it would be difficult to see how evidence of character could have much, if any, effect. Thus, in *Hogan v. State*, 36 Wis. 234, "the homicide was not denied, nor justified, nor excused," and hence the instruction to the jury that evidence of good character "was competent, but that it could not avail against facts positively proven," was held not error. Where the other evidence is such as to repel every inference or presumption arising from proof of good character, and to preclude all possibility of a doubt being generated by such proof, there would seem to be no error in characterizing its weakness; but even then, the prudent judge will be cautious not to say anything which might prejudice the prisoner.

In the case at bar we do not think the jury could have been misled. The trial judge stated the theory of the prosecution, and the theory of the defense, which were in direct conflict. He told the jury there was testimony tending to prove both theories. He also referred to the testimony in support of these respective theories, which testimony was also in direct conflict. In connection with the portion of the charge quoted above, and after telling the jury that the prisoner had introduced testimony tending to show his good character; that he was quiet and peaceable, and not of a quarrelsome disposition,— they were also instructed: " But where the evidence is circumstantial *or contradictory* the fact that the defendant's previous character has been good and such as is inconsistent with such conduct as he is charged with, *is a fact* that the jury *should consider* in connection with all others in the case; and if, upon all the facts of this case, *including the previous character of the prisoner*, you have any reasonable doubt as to his guilt, you should find him not guilty." This was followed by charging

the jury, in effect, that the burden of proof was upon the state to establish every essential fact to warrant a conviction; that the defendant was presumed innocent until he was proved guilty; and that such proof must convince the jury beyond a reasonable doubt of the existence of all those facts. Thus, taking the whole charge together, the jury were, in effect, told that this was not a case where the facts constituting the crime were clearly proved, so as to render evidence of good character of little or no effect, but one where the testimony was contradictory, and hence the evidence of the defendant's good character should be considered in connection with all other evidence in the case; and that if they had any reasonable doubt of the defendant's guilt, upon all the facts of the case, including his good character, then he should be acquitted. Such being the nature of the charge, there seems to be no ground for the exception.

4. Exception is taken because the trial court did not set aside the verdict as against evidence, and grant a new trial. It is said that such refusal was based upon a misconception of his powers in that regard. The correctness of such ruling sufficiently appears from the reasons given in the written opinion filed by the learned circuit judge in disposing of the motion. It is unnecessary here to add much, if anything, to a few extracts from that opinion. After stating, in effect, that he had been urged to set aside the verdict as not supported by the evidence, on the theory that it was his duty to do so "unless convinced beyond all reasonable doubt of the prisoner's guilt," he said: "I do not so understand the law." Then, after quoting at some length what was said by this court in *Williams v. State*, 61 Wis. 289, and *Boyle v. State*, 61 Wis. 440, 449, he added: "If there be evidence which fairly tends to prove the guilt of the defendant, and the jury find him guilty, it is not within the province of this court to set aside their verdict because I

The State vs. Leppere.

may entertain doubt of his guilt. I must think that the probative force of the evidence is not sufficient to lead the jury to the conclusion of guilt. It is true, as said by TAYLOR, J., the effect of the evidence as to its convincing character is first addressed to the jury, and afterwards to the trial judge on the motion for a new trial. But the province of the jury and judge are not the same. The jury must be convinced by it beyond all reasonable doubt. The court must be satisfied that the probative force of the evidence is sufficient to lead the jury to that conclusion. Each must be satisfied with the verdict from the stand-point of its province and duties concerning the same." He then commented on the testimony of four witnesses against the prisoner, and said: "The testimony of these four witnesses certainly tends to prove the prisoner's guilt, and, in the absence of the defendant's own testimony, I think no unprejudiced mind would say that it did not prove it." After commenting on the testimony in the case tending to support the defense, he concluded his remarks relative to this point by saying: "My sympathy has been with the prisoner from the time I first saw him and learned who he was, and it has grown through the trial. I have given great attention, thought, and study to the case. I have had doubt as to the prisoner's guilt after hearing all the evidence and arguments. My sympathy, and the feeling of responsibility, have led me to hope for an acquittal. Were I a juror, I might not be able to say that I entertained no reasonable doubt. A lawyer's mind is trained to doubt. A thorough lawyer, after twenty years' practice, becomes almost incapable of being certain of anything. Upon a final and careful review of the whole case, I cannot say that I am satisfied that the prisoner did not fire the gun. Neither have I such doubt of it as satisfied me that the verdict of the jury is not right. The responsibility is with them of deciding the question. I do not regard it my right or duty to disturb their

verdict, unless I think that there was not sufficient evidence to warrant them in being convinced.    I think the evidence sufficient to warrant a conviction."

We do not think it appears from the opinion of the judge that he disclaimed authority to exercise any judicial function, and hence the case does not come within the rule held in *Smith v. Dragert*, 61 Wis. 222, relied upon by counsel. He nowhere indicated that the verdict was not supported by evidence.    On the contrary, he stated, in effect, that the testimony of the four witnesses named tended to prove the prisoner's guilt, and, in the absence of the defendant's own testimony, he thought no unprejudiced mind would say that it did not prove it.    He could not say he was satisfied that the prisoner did not fire the gun, nor that he had such doubt of it as to satisfy him that the verdict was wrong.    True, his sympathy was with the prisoner from the time he first saw him and learned who he was.    This sympathy grew on him during the trial.    It apparently gave him great faith and confidence in the truthfulness of the prisoner's testimony; so much so, that he indicated that had he been one of the jurors he might have been unable to say he entertained no reasonable doubt; that is to say, his faith and confidence in the defendant's veracity was so great that it might have led him, as such juryman, to doubt the veracity of the four witnesses upon the part of the state.    But even this he qualified by indicating that a lawyer's mind was trained to doubt, and, after twenty years' practice, became almost incapable of being certain of anything.    If this is so, then it is well that questions of fact in actions at law should be determined by a jury,— certainly criminal cases. It has been said that lawyers make poor jurymen.    Whether the experiment has been made with good lawyers of the amount of practice indicated may be questionable.    It is enough here to know that the judge was not acting as a juryman upon the trial.    He wisely discriminated between

his functions as judge and what would have been his functions had he acted as a juryman. The right of trial by *twelve* jurymen is what remains inviolate in this state. Sec. 5, art. I, Const. of Wis. The peculiar function of such a jury is to weigh evidence. In case of irreconcilable conflict in the testimony, it is, moreover, for the jury to determine what is true and what is false, and who is worthy of credit, and who should be disbelieved. Where there is a faithful performance of that duty, and no intervening error, the finding of the jury, if supported by evidence, is binding upon the court. To convict, the twelve jurymen must all be convinced of the prisoner's guilt beyond any reasonable doubt. But there is nothing requiring thirteen men to be so convinced. The judge guides the jury in matters of law, and to the issues involved. He restrains the jury within their province. He may relieve from the results of their departure from duty through inadvertence or design. He may set aside a verdict of guilty not warranted by evidence; but he has no authority to set aside such a verdict, when supported by evidence, merely because he might, as juryman, have reached a different conclusion.

5. Exception is taken because the court refused to set aside the verdict, and grant a new trial, upon an affidavit stating, in effect, that two of the jurymen had admitted that they were for a long time divided, the majority being for acquittal, and that one of the jurymen argued in favor of conviction on the ground that the defendant ought not to have been at the place of the homicide. It is too well settled for discussion that a verdict is not impeachable by such admissions or statements. Proffatt on Jury Trials, § 408; *Forester v. Guard*, 12 Am. Dec. 141, and notes.

6. Exception is taken because the court refused to set aside the verdict, and grant a new trial, on the ground, as appears from the affidavits of the defendant, James Duryer, and William Van Horn, that after the conviction Helen

Fileo, who was charged with the same offense, and was a witness upon the trial, had admitted to them, in effect, that if she had testified to the truth upon the trial the defendant would not have been in jail where he then was. Her affidavit was not produced, and no reason given for its nonproduction. The showing was entirely insufficient to authorize any disturbance of the verdict. *Dunbar v. Hollinshead*, 10 Wis. 505; *Smith v. Cushing*, 18 Wis. 295; *Sawyer v. La Flesh*, 65 Wis. 659; *Hoffmann v. State*, 65 Wis. 46.

It is unnecessary to consider the questions presented further in detail.

*By the Court.*— The several exceptions allowed are overruled, and the cause is remanded for further proceedings according to law.