UNITED STATES v. DRIGGS.

SAME v. MILLER.

(Circuit Court, E. D. New York. September 28, 1903.)

1. CRIMINAL LAW—LIMITATION OF PROSECUTION—PAYMENT TO MEMBER OF CONGRESS FOR PROCURING GOVERNMENT CONTRACT.

Rev. St. U. S. §§ 1781, 1782 [U. S. Comp. St. 1901, p. 1212], make it a criminal offense for any member of Congress to receive or agree to receive any money, property, or other valuable consideration for procuring or aiding to procure any contract from the government, or to receive any compensation for services rendered in relation to any claim or contract in which the United States is a party. Section 1781 also makes it an offense for any person to give or agree to give any money, property, or other valuable consideration for the procuring or aiding to procure such contract by a member of Congress. Held, that the delivery to a member of Congress of a nonnegotiable note made by a government contractor, promising to pay a certain sum as the proceeds of the contract were received, executed pursuant to an agreement to pay such member for his services in procuring the contract, did not constitute the giving or receiving of "property" or a "valuable consideration," within the meaning of the statute, such note being made unlawful and invalid by the statute itself; and that indictments under the statute, based on payments subsequently made and received in accordance with the terms of the note, were not barred by limitation, where such payments were made within three years, although the note was delivered more than three years prior to the finding of the indictments.

Criminal prosecutions. On demurrers to indictments, under Rev. St. U. S. §§ 1781, 1782 [U. S. Comp. St. 1901, p. 1212].

William J. Youngs, U. S. Atty.

Hugo Hirsh, for defendant Driggs.

Kellogg & Rose, for defendant Miller.

THOMAS, District Judge. Section 1781, Rev. St. U. S. [U. S. Comp. St. 1901, p. 1212], provides:

"Every member of Congress * * * who, directly or indirectly, takes, receives, or agrees to receive, any money, property, or other valuable consideration whatever, from any person for procuring, or aiding to procure, any contract, * * * from the government or any department thereof, * * * for any person whatever, * * * and every person who, directly or indirectly, offers or agrees to give, or gives, or bestows any money, property, or other valuable consideration whatever, for the procuring or aiding to procure any such contract, * * * shall be punished," etc.

Section 1782 provides:

"No Senator, Representative, or Delegate, after his election and during his continuance in office, * * * shall receive or agree to receive any compensation whatever, directly or indirectly, for any services rendered, or to be rendered, to any person, either by himself or another, in relation to any proceeding, contract, claim, * * * or other matter or thing in which the United States is a party."

Some, but not all, of the indictments allege the following facts, which by the demurrers are conceded only for the purpose of raising questions of law:

At a time prior to May 25, 1899, the Edward J. Brandt-Dent Company made a contract with the United States to furnish 250 or more

machines, called automatic cashiers, and on the last-named date such company executed the following instrument:

"Watertown, Wis., May 25, 1899.

"For value received, we promise to pay George F. Miller or order, twelve thousand five hundred dollars without interest on receipt of the proceeds of sale of 250 or more automatic cashiers, sold May 19, 1899, to the United States Post Office Department."

This instrument was, on or about the time of its date, delivered to the defendant Miller, who was the agent of the obligor; whereupon it was delivered by Miller to the defendant Edmund H. Driggs, who procured, or aided in procuring, the contract from the government. The instrument of July 26th embodied in part an agreement made by such obligor, through its agent Miller, with Driggs, whereby Driggs undertook to procure or aid in procuring such contract. As the government received and paid for the cashiers from time to time, Miller, acting always as the agent of such company, received from it numerous drafts, payable to his order, and indorsed the same to Driggs as his compensation for procuring or aiding in procuring the contract from the government; whereupon Driggs caused the drafts to be cashed, and kept the proceeds.

The defendant Miller is charged in certain indictments, drawn under section 1781, for making such delivery of certain of such drafts to Driggs, and Driggs is charged separately in several indictments, drawn, some under section 1781, and some under section 1782, for receiving drafts from Miller; the charge being that Miller gave, and Driggs received, such drafts for procuring such contract while Driggs was a member of Congress. All the specific deliveries and receipts of drafts upon which the indictments are based were within three years next preceding the finding thereof. When the contract was made, and the instrument of May 25, 1899, delivered to Miller, and by Miller to Driggs, it is alleged that Driggs was a member of Congress. Each defendant demurs to the indictments severally found against him.

The demurrers should be overruled. The important questions are (1) whether Driggs was a member of Congress when the offenses charged in the indictments were committed; (2) whether the statute of limitations has run against the actions or any of them.

The indictments charge sufficiently that Driggs was such member, and that Miller had knowledge thereof. Therefore the first question cannot be determined at this time, although, if the facts be as claimed by the defendants, a decision of the matter before the trial might be due both the government and the defendants. It may be that the objection that the statute of limitations has run against the actions cannot be taken by demurrer, but that objection has not precluded the court from examining and deciding the question, and it is concluded upon the facts as gathered from certain of the indictments (although several of them do not show such facts) that the actions are not barred. It is not deemed necessary to state at any considerable length the reasoning by which this decision is reached.

The instrument dated May 25, 1899, was not negotiable, and therefore no value could be added to it by transferring it. In any case,

whether it was "property" or a "valuable consideration," within the meaning of the statute, so that an indictment could be based upon it within three years after its delivery to Driggs, depends upon its nature and value at the time of such delivery. At the outstart it is obvious that the instrument of May 25, 1899, embodied in part the agreement pursuant to which Driggs undertook to procure the contract from the government, and fixed the condition and times when he should receive compensation therefor. Although it be a fragment of such agreement, and such agreement was originally not in writing, the instrument of May 25th has the same qualities as if it contained all the terms of the agreement. An indictment, otherwise correct, charging that the defendants offended by making the agreement, or by being parties thereto, would have been valid, if found within three years from the time of making it, as section 1781 in terms forbids such an agreement to be made. But an indictment based upon the instrument as embodying the agreement is quite different from an indictment for giving or receiving "money," "property,", or "other valuable consideration" upon the theory that such agreement was itself "property" or "other valuable consideration." The defendants contend that such agreement was in itself "property" or "other valuable consideration"; that it represented the money that was thereafter paid and upon which the present indictments are based; that the defendants could have been indicted, not only for making the agreement, in part embodied in the instrument, but also for giving or receiving a thing of such value as the instrument itself has; that a conviction or acquittal on an indictment for giving or receiving it would have been a bar to an indictment for thereafter receiving the money provided for by the agreement; and upon such premises they base the argument that the statute of limitations began to run from the time the instrument was delivered, and not from the time that the several payments were made. This contention rests wholly upon the theory that the agreement was itself "property" or "other valuable consideration." But the instrument has no validity, because it was the very thing against which the statute was aimed. It had in legal theory no value for the purposes of sale; it was not enforceable against the makers; its payment depended entirely upon an unconscionable readiness of the makers to meet an illicit promise, given as a part of a corrupt bargain, for corrupt practices. The instrument was tainted and made worthless by the statute itself. Could the same statute stamp as something valuable, as property, a writing whose existence it had inhibited? The statute declares that a member of Congress shall not agree "to receive any money, or property, or other valuable consideration whatever, from any person, for procuring * * * any contract * * * from the government." If a member of Congress and such person enter into an agreement to do this very thing, how can the agreement be regarded as property or a valuable consideration? Does the statute refuse the agreement life by prohibiting it, and at the same time, upon its interdicted birth, breathe life into it, and give it the characteristics, the protection, and the equality of property? According to such argument, the statute kills

and quickens the same agreement at the same instant. It stifles while it animates. It precludes its existence, and, being defied, attaches worth to its reality. Leavened and vitiated by guilt, and imbued and vivified by virtue, by the same statute! One seeks in vain for fit expression of the contrariety. It must be remembered always that the very same statute—the same section—that commands that it shall not be, is invoked to vitalize it into a valuable entity. The very same agreement for making which the defendants, under the statute, could be indicted, is exalted, by defendants' contention, to the state of lawful "property" or "other valuable consideration," so that the defendants, under the same statute, could be indicted for giving or receiving it as such. The forbidden agreement denounced by this section, and demanding the full punishment provided for it, is claimed to have properties that give it worth, so that the parties to it may be punished by the same section for giving and receiving it as if it had merit and excellence. A statute that at one and the same time could make the creation of an agreement a felonious offense, and yet esteem the very same agreement as property and a valuable consideration between the felons, would be curious in law and logic. It would be difficult to think well of a statute that should say to two men: "I will punish you for making an agreement, and yet I will regard that agreement as property and as a valuable consideration if you do make it, and also punish you for passing the agreement from one to the other, simply upon the ground that it is such 'property' or 'other valuable consideration.' " Such alleged conjunction of validity and invalidity, such compounding of unlawful existence and legal existence, such fusing of corruption and incorruption into the same agreement, by the same statute, is not understandable. A statute that proclaims that an agreement is so noxious to the public good that the parties to it should be imprisoned for making and delivering it one to the other should not be interpreted to mean that such agreement is in any degree recognized by the law as sane, useful, and marketable. The statute prohibited an agreement to do the act, and also giving or receiving compensation for doing it. It made either a punishable offense, but it did not intend to make the agreement property or a valuable consideration. Valuable consideration for what? For agreeing to do the act? That would make the agreement a valuable consideration for its own making. Of course, the mutual promises contained in the agreement might sustain it, if the statute did not punish on account of those very promises. But it is not intended to refine the argument. The occasion demands no niceties of reasoning. The very statement of the defendants' proposition should demonstrate its invalidity. It is so abhorrent to moral and legal conceptions, so inimical to plain reason, that some technical rules, elsewhere wholesome and properly applied, but now skillfully invoked by defendants' counsel, must be broken through and discarded, and ultimate vital judgments allowed to prevail. If any one shall decide, or has decided, that a statute may be interpreted to denounce an agreement as impossible of worthy existence, and after it has come forbidden into the light declare that it has such worthiness that it may be regarded as "property"

or "other valuable consideration," for the purposes of the same statute, the responsibility of such decision shall not rest upon this court. The contention that an agreement by this statute can be a ground of punishment (1) because it exists at all, and (2) because it is a valuable consideration, and should be ranked with property recognized by law, cannot be approved. The statute means by "valuable consideration" not the unlawful agreement to do the act denounced by the statute, but some valuable thing, like money, property, or the notes or obligations of third persons or corporations.

But it may be urged that the instrument does not embody the agreement between the parties. It was given to Miller, the agent of the makers, for delivery to Driggs. It was not issued or uttered by delivery to Miller. He received it as agent, from a principal, for the very purpose of delivery to Driggs. To what end? To show by writing, in whole or in part, what agreement the makers, through Miller or otherwise, had made with Driggs. It embodied that agreement in part. To what extent it contains it is unimportant.

These considerations lead to the conclusion that, while the defendants could have been indicted for making the agreement in part embodied in this instrument, they could not have been indicted for receiving or giving it, upon the theory that it was "property" or "other valuable consideration." In point of time, as each ,payment was made an offense under the statute was committed, and so far as such payments were made within three years before the indictments were found the indictments may be based thereon.

Orders will be entered overruling the demurrers, with leave to the defendants to plead over.