SCHUTZ, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 10—June 23, 1905.*

*Criminal law and practice: Bribery: Elements of offense: Statutes: Evidence: Declarations of conspirators: Preliminary inquiry: Res gestæ: Instructions to jury: Witnesses: Motive: Reputation: Credibility: Singling out witness: Interest of witnesses.*

1. In a criminal prosecution for bribery, direct testimony both of the making of the promise and of payment of the money is sufficient to carry both questions to the jury, notwithstanding defendant's direct denial and the testimony of several witnesses in refutation of the payment.
2. In a prosecution for bribery the charge and proof of the acceptance of a promise to pay money in the future will support a conviction under sec. 4475, Stats. 1898 (denouncing a punishment for curruptly accepting or receiving "any gift, gratuity, money, goods, things in action, personal or real property or any thing of value, or any such pecuniary or other personal advantage, *present or prospective,*" etc.)

3. In a prosecution for bribery it appeared from the testimony, among other things, that defendant asked A., the person alleged to have corruptly paid defendant money to influence his official action, if things were fixed with P., and that defendant afterwards asked for the money, in accord with P.'s arrangement. *Held*, that such evidence was sufficient to make such a *prima facie* case of agency and confederacy between defendant and P. as to support a ruling of the trial court admitting such statements of P., who was dead, as were strictly *res gestæ*, within the rule that the trial court's decision as to whether a conspiracy existed *prima facie* has the weight of any other finding of fact.

4. Statements of a confederate or co-conspirator, accompanying acts in furtherance of the conspiracy, are admissible as against all other parties to the conspiracy.

5. In a criminal prosecution an instruction to the jury: "The office of evidence respecting good reputation is not to raise a doubt of guilt, but to aid in solving it," is erroneous and prejudicial.

6. In a prosecution for bribery the principal testimony against the accused consisted of a conversation by a witness for the state with a third person, since deceased, which was antagonized, in one respect or another, by witnesses other than the defendant. In reference to this testimony the court instructed the jury: "Is the evidence given by A. [the state's witness] in this case true, or is it untrue? Did he make up or did he fabricate the story which he has told, for the purpose of convicting an innocent man? These are questions which each of you should consider in weighing his testimony. It is your plain duty, if you believe that A. made up or fabricated the story which he has disclosed to you, to determine, if you can, the motive for such a course on his part. It is quite improbable that such a thing could be done without a motive. In this connection the court instructs you that if you should agree with the defendant that the testimony of A. is a pure fabrication, you should at least be able to find some motive for such a wicked fabrication on his part." *Held*, erroneous:

(1) It excluded the jury from considering whether a conflict of evidence might be accounted for on the ground of honest mistake.

(2) It selected one witness from several and applied to him and his testimony, exclusively, rules of construction equally applicable to others.

(3) It declared the necessity of discovering the motive as a *sine qua non* to the disbelief of A., even though he was squarely contradicted by other credible evidence.

7. An instruction directing the jury's attention to the peculiar interest of a party, in weighing his testimony, is generally proper, but it should always be qualified by the further instruction that considerations of interest, appearances, manner, etc., apply to him in common with all other witnesses.

[8. Whether the omission to state such qualification in immediate connection with the instruction itself will be held cured by a general direction, elsewhere in the charge, to apply the test of interest to all witnesses, not decided.]

9. In a criminal prosecution an instruction: "A wise rule which jurors may adopt for their guidance, when there is conflict of testimony between the witnesses, is to give credence to the testimony of that witness or those witnesses who have the least inducement, through interest or other motives, to testify falsely," is *held* erroneous as an invasion of the jury's essential province of passing on the credibility of witnesses.

ERROR to review a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Reversed.*

Plaintiff in error was indicted for that, being a supervisor of the county of Milwaukee, on June 20, 1899, he did "wilfully, corruptly, and feloniously accept, take, and receive of and from one Herman Andrae a promise and agreement that he, the said Herman Andrae, would pay and cause to be paid to the said *Jacob Schutz* a large sum of money, in money, of the value of $344.67," upon the intent and under an agreement and understanding that the action of said *Schutz* as supervisor should thereby be influenced in the matter of letting a certain contract for electrical construction. The evidence for the prosecution consisted almost exclusively of Andrae's testimony, to the effect that, bids being called for, he (Andrae) was approached by one Patitz, the county's electrical engineer, and requested to add to the amount of his bid ten per cent. for the benefit of the defendant and of one Schunk, who was chairman of the building committee; Patitz assuring Andrae that he would get the contract if he did this. Andrae further testified that, on the day of presentation of bids, defendant saw him privately and asked him if he had

made arrangements with Patitz and if everything was fixed all right, and Andrae had taken care of him (*Schutz*). He also testified that on a day fixed, by reference to certain office records, the defendant came to his place of business and demanded and received $300 of the amount so included in Andrae's bill. The defendant denied absolutely the interview with Andrae before the letting of the bids and the demanding or receiving any money from him. An *alibi* as to the time of alleged payment of the money was proved by three witnesses. Patitz being dead, his testimony was not obtainable. Schunk testified to an arrangement with Andrae whereby he (Schunk) alone was to receive ten per cent. of the amount of the bid, in which arrangement the defendant had no participation. Several witnesses affirmed defendant's good reputation and character without contradiction. Upon a verdict of guilty, judgment and sentence to the Milwaukee house of correction was pronounced, to review which the plaintiff in error sued out writ of error from this court.

For the plaintiff in error there was a brief by *C. A. A. McGee* and *Julius E. Roehr*, attorneys, and *McGee, Jeger & Gabel*, of counsel, and oral argument by *Mr. McGee, Mr. Roehr*, and *Mr. George H. Gabel*.

For the defendant in error there was a brief by the *Attorney General* and *F. E. McGovern*, district attorney, and *Walter D. Corrigan* and *Guy D. Goff*, of counsel, and oral argument by *Mr. Corrigan*.

DODGE, J. 1. Sufficiency of evidence to support conviction:

(a) There is the direct evidence of Andrae both to the making of the promise and of payment of the $300. This suffices to carry both questions to the jury, notwithstanding defendant's direct denial and the testimony of several witnesses in refutation of the latter fact.

(b) The only act charged in the indictment or proved by

evidence is the receiving of a promise to pay money in the future. Is this an offense under our statute? Authorities are uniform to the proposition that a charge of receiving property or anything of value cannot be supported by proof of receiving a mere promise to give or do something in the future, which, by virtue of this very statute, is illegal, and therefore void and of no value. *State v. Walls,* 54 Ind. 561; *Hutchinson v. State,* 36 Tex. 293; *U. S. v. Driggs,* 125 Fed. 520; *People v. Seeley,* 137 Cal. 13, 69 Pac. 693. The statutes of very many states and of the United States make it a crime to *agree* to receive, as well as to receive, anything of value; and South Carolina makes it a crime to accept a gratuity or a *promise* of a gratuity; and Michigan, to accept any gift, or any *promise* to make any gift. Under such statutes there could be no doubt. But our statute (sec. 4475, Stats. 1898) does not in express terms make either an agreeing to receive something, nor the reception and acceptance of a promise, criminal. It does, however, contain as a description of the things, receipt of which is bribery, "any such pecuniary or other personal advantage, present or prospective." The word "such" doubtless relates back to "gift, gratuity, money, goods, things in action, personal or real property, or anything of value." We are persuaded that this language is intended to cover a promise of the prospective delivery of such property. It is difficult to conceive how any such pecuniary or personal advantage as money or property can be *prospective* save as there is a present promise for its subsequent delivery. We are bound to give some force and effect to every word, if possible, and, since we can find no other meaning, must conclude that by "prospective advantage" the legislature intended a promise of future delivery of some of the specified articles of value. Hence a charge and proof of the acceptance of such a promise will support conviction under sec. 4475, Stats. 1898.

2. Admissibility of Patitz's acts and statements: State-

ments of a confederate or co-conspirator, accompanying acts in furtherance of the conspiracy, are admissible as against all other parties to the conspiracy. *Tucker v. Finch,* 66 Wis. 17, 20, 27 N. W. 817; *Holtz v. State,* 76 Wis. 99, 109, 44 N. W. 1107; *Baker v. State,* 80 Wis. 416, 420, 50 N. W. 518; *State v. Ames,* 90 Minn. 183, 96 N. W. 330; *People v. Salsbury,* 134 Mich. 537, 96 N. W. 936; *People v. Mc-Garry* (Mich.) 99 N. W. 147. Whether the conspiracy existed *prima facie* is one of those preliminary facts to be decided by the court for the purpose of ruling on the admissibility of such statements or acts, and the court's decision thereon has the weight of any other finding of fact. *Hupfer v. Nat. D. Co.* 119 Wis. 417, 427, 96 N. W. 809. The evidence of Andrae that defendant asked if things were fixed with Patitz, and that defendant afterwards asked for the money in accord with Patitz's arrangement, might make such a *prima facie* case of agency and confederacy between defendant and Patitz as to support the ruling of the trial court admitting such statements of Patitz as were strictly *res gestæ,* as much of those admitted in fact were. *State v. Ames, supra.*

3. Error is assigned upon an instruction that "the office of evidence respecting good reputation is not to raise a doubt of guilt, but to aid in solving it." The proposition has no support from any authority or text-writer, so far as we can discover, except for a *dictum* in *Bernhardt v. State,* 82 Wis. 23, 28, 51 N. W. 1009, 1010, where it is said:

"Such fact is not to raise doubts when the evidence is clear and positive and there is no doubt on the facts, but, as said in *Hogan v. State,* 36 Wis. 226, 'to solve doubts of proof.'"

Even this would not warrant the giving of such instruction in the instant case, where the proofs are by no means of the conclusive character described, as we shall point out later; but the statement is, we are convinced, incorrect. This court has already decided that, even in the presence of evi-

dence otherwise sufficient to convince the jury of guilt, the previous good character of the accused may, in connection with all the evidence, generate such a doubt as to prevent conviction. *Conners v. State,* 47 Wis. 523, 528, 2 N. W. 1143; *State v. Leppere,* 66 Wis. 355, 28 N. W. 376; *Jackson v. State,* 81 Wis. 127, 51 N. W. 89. That is in accord with human experience. How often do we find in ordinary affairs that the most criminatory facts, circumstances, and information fail to arouse belief in the guilt of one whom, we have known to always evince a character inconsistent with such an offense. To deny such efficacy is to shut our eyes to the perfectly well known mental processes of men. For what purpose is the evidence admitted if it cannot create and justify a doubt which would not otherwise exist? If the doubt exists without it, acquittal should result, and the fact of previous good character is of no use to the defendant. Such evidence is received to show that it is improbable that the accused would commit the crime. *State v. Leppere, supra; Hardtke v. State,* 67 Wis. 552, 30 N. W. 723. If the jury are forbidden to recognize that improbability as a reason for hesitancy in giving credit to the adverse evidence, they are driven into artificial and unnatural mental processes, foreign to those which, as reasonable men, they customarily follow. Of course, when, notwithstanding such improbability, they are convinced beyond a reasonable doubt that defendant committed the criminal acts, the jury must convict, however impeccable his previous life; and that was the whole substance of the holding in *Hogan v. State, supra,* upon which ORTON, J., seems to have founded his *dictum* above quoted. Though an instruction that the fact of good character is sufficient in any given case to engender a doubt may be improper, as invading the province of the jury by expressing an opinion as to the weight of evidence, an instruction that it cannot have such effect has been condemned in a multitude of decisions, some of which are collected in Hughes,

Instr. to Juries, § 340 *et seq.;* 12 Cyc. 621; and 11 Ency. Pl. & Pr. 347. We are clear, both upon reason and authority, that the instruction given by the trial court was erroneous and prejudicial to the plaintiff in error.

4. Error is assigned upon an instruction in following words:

"Is the evidence given by Mr. Andrae in this case true, or is it untrue? Did he make up or did he fabricate the story which he has told, for the purpose of convicting an innocent man? These are questions which each of you should consider in weighing his testimony. It is your plain duty, if you believe that Mr. Herman Andrae made up or fabricated the story which he has disclosed to you, to determine, if you can, the motive for such a course on his part. It is quite improbable that such a thing could be done without any motive. In this connection the court instructs you that if you should agree with the defendant, *Jacob Schutz,* that the testimony of Herman Andrae is a pure fabrication, you should at least be able to find some motive for such a wicked fabrication on his part."

The first criticism of this charge is that it usurps the functions of the jury in substantially instructing them that Andrae's story is either true or a fabrication. By the clearest implication it excludes the jury from that field which especially belongs to them, of considering whether a conflict of evidence may be accounted for on the ground of innocent mistake. Such an act by a trial court is always improper, though not always prejudicially so, for there may be situations where no reasonable possibility of innocent mistake can be conceived, as in the case of *Douglass v. State,* 43 Wis. 392, where the opposing parties respectively affirmed and denied an act of carnal intercourse. No such palliation exists in the present case, however. An important part of Andrae's testimony was to alleged statements of one Patitz, as a co-conspirator with defendant, from which might result an inference that a corrupt agreement was made by Patitz upon the authority of the defendant. Upon no subject is it more

obvious, either in law or in reason, that mistakes are prob-
able than in quoting a conversation with another. Such nar-
rative involves uncertainty as to whether the narrator fully
understood the words spoken to him, whether he truly in-
terpreted the meaning of the speaker, and whether he cor-
rectly remembers those words at the time of testifying. The
conversation related might well be deemed ambiguous; it was
complicated by the joining of two foreign names, *Schutz* and
Schunk, not wholly dissimilar, as is evinced by the repeated
confusion of them by counsel in their arguments; and some
probability of a mistake on Andrae's part is at least sug-
gested by the testimony of Schunk that he alone was involved
in the corrupt agreement. All of these considerations were
proper for the jury before reaching the conclusion that An-
drae wilfully fabricated his story, and by the preliminary
portion of the instruction were erroneously excluded. *Moore
v. Kendall,* 2 Pin. 99, 103; *Ely v. Tesch,* 17 Wis. 202; *Rob-
erts v. State,* 84 Wis. 361, 54 N. W. 580; *Smith v. Lehigh
Valley R. Co.* 170 N. Y. 394, 63 N. E. 338.

Another serious criticism of this charge arises from the
rule that it is not proper for the court to select one witness
from several and apply to him or his testimony exclusively
rules of consideration equally applicable to others. *Valley
L. Co. v. Smith,* 71 Wis. 304; *McKeon v. C., M. & St. P.
R. Co.* 94 Wis. 477, 486, 69 N. W. 175; *Meyer v. Milwau-
kee E. R. & L. Co.* 116 Wis. 336, 343, 93 N. W. 6; *Loose
v. State,* 120 Wis. 115, 133, 97 N. W. 526; *Harriott v.
Holmes,* 77 Minn. 245, 79 N. W. 1003; Hughes, Instr. to
Juries, § 223. Such discrimination is extremely likely to
mislead the jury into a disregard of other testimony in the
case, or undue respect or suspicion for the specified witness.
In this case, besides the defendant, there were several other
witnesses antagonizing, in one respect or another, the testi-
mony of Andrae, as to whom this instruction might as well
have been applied. There was Schunk, who testified that

the bargain whereby Andrae was to pay ten per cent. of his bid for obtaining the contract was made exclusively with him (Schunk); and there was the testimony of at least three witnesses that the defendant was not in Milwaukee at the time, fixed with certainty, when Andrae claimed to have paid defendant $300.

Further than this, however, the instruction could hardly have failed to convey to the jury the idea that they could not honestly, as jurymen, disbelieve Andrae's story unless they could "find some motive for such a wicked fabrication on his part." The correctness of any such idea was seriously questioned by this court in *Jackson v. State,* 91 Wis. 253, 267, 64 N. W. 838, and it was there intimated that such an instruction would probably be misleading under circumstances other than such as excluded the possibility of mistake. It is not the law that the jury may not discredit a witness, or even conclude that he has wilfully sworn falsely, without being able to find a motive, any more than they are precluded from finding the guilt of a defendant although the motive be not apparent. Doubtless, as said in *Jackson v. State,* absence of any motive is a proper consideration for the jury in deciding whether a witness has wilfully falsified; but this instruction is so framed as to go beyond that principle, and, in effect, to declare the necessity of discovering the motive as a *sine qua non* to the disbelief of witness, even though he be squarely contradicted by other credible evidence.

5. This assignment of error complains of the following instruction:

"Under the law of this state the defendant is a competent witness in his own behalf. In considering the weight of his testimony you have the right to bear in mind his interest in the result of the trial and the temptation that exists under the circumstances to testify falsely, and everything bearing upon his credibility, and then give his evidence such weight as the jury believes it is entitled to receive."

An instruction directing the jury's attention to the peculiar interest of a party in weighing his testimony has generally been held proper, but it should always be qualified by the further instruction that considerations of interest, appearance, manner, etc., apply to him in common with all other witnesses. *Emery v. State,* 101 Wis. 627, 657, 78 N. W. 145; *Kavanaugh v. Wausau,* 120 Wis. 611, 620, 98 N. W. 550; *Strasser v. Goldberg,* 120 Wis. 621, 98 N. W. 554; *Hellyer v. People,* 186 Ill. 550, 554, 58 N. E. 245; *Harriott v. Holmes,* 77 Minn. 245, 79 N. W. 1003. Whether the omission to state that qualification in immediate connection with the instruction itself will be held cured by a general direction elsewhere in the charge to apply the test of interest to all witnesses may be doubtful. Such question ought not to come to this court, for an instruction prepared by the judge in a spirit of judicial fairness to the accused would hardly omit such cautionary qualification. Its absence here may probably be accounted for by the fact appearing by the record that the instruction assailed was framed and requested by the prosecuting attorney, perhaps rather from the point of view of zealous advocacy than of judicial care for the interests of both parties. As the judgment must be reversed for other reasons, we need not decide whether such result might be avoided were this the only error.

6. Error is assigned upon the following instruction:

"A wise rule which jurors may adopt for their guidance when there is a conflict of testimony between the witnesses is to give credence to the testimony of that witness or those witnesses who have the least inducement, through interest or other motives, to testify falsely."

We can hardly conceive a statement more in contradiction of the true rule in philosophy or in law. It eliminates all but one of those considerations which men usually do, and juries always should, give weight in passing upon the credibility of conflicting witnesses. It subordinates accurate

knowledge of the facts to ignorance or imperfect information. It promotes a proved liar over the man of sternest veracity. It excludes recognition of intelligence and understanding, on the one hand, as against stupidity and lack of comprehension, on the other. It directs the jury to give no weight to obvious fairness of one witness, as against a disposition to prevaricate and suppress the truth apparent in another from his demeanor on the stand. All this constitutes such an invasion of the jury's essential province of passing on the credibility of witnesses as is most improper in a trial court. *Moore v. Kendall,* 2 Pin. 99; *Hill v. State,* 17 Wis. 675, 680; *Lee v. State,* 74 Wis. 45, 41 N. W. 960; *Roberts v. State,* 84 Wis. 361, 54 N. W. 580; *Thomas v. Paul,* 87 Wis. 607, 614, 58 N. W. 1031; *Omaha Belt R. Co. v. McDermott,* 25 Neb. 714, 720, 41 N. W. 648; *Nelson v. Vorce,* 55 Ind. 455; *Dodd v. Moore,* 91 Ind. 522, 525; Blashfield, Instr. to Juries, § 226. Especially harmful is such a charge where one accused of crime is one of the witnesses, for his interest in the result is so obviously greater than that of any other that the jury must understand that they are to discard all of his testimony which conflicts with the statement of any other witness. Even the instruction, radically different from, and less noxious than, this, "When the witnesses appear to be equally credible in every other respect, then one who appears to have the greater interest in the result of the case is to have the less weight of the two," was met with such condemnation by this court as to justify the expectation that no trial judge would ever again embody such idea in an instruction. *Lee v. State, supra.* One can hardly imagine a case where such an instruction would more certainly deprive a party of a fair consideration of his defense than in this. The only evidence of defendant's connection with the alleged criminal agreement made on his behalf was the testimony of Andrae. The only direct contradiction of one of the acts so testified to was the

defendant's own testimony. Andrae stood before the jury discredited by his confessed criminality as a willing bribe giver, and further by a striking facility and willingness in mendacity, evinced by his own narrative of his statements to the building committee. He was contradicted on material points by Schunk. His statement that he paid certain money to defendant at a time fixed by him positively was disputed by the testimony of three disinterested witnesses that defendant was elsewhere. Against this man stood the defendant, entitled at the time he testified to the presumption of complete innocence, protesting absolute and entire ignorance of, and denying all connection with, any bargaining by either Patitz or Schunk, and corroborated by the latter. Besides this, it was affirmatively shown that he was a man of probity, integrity, and veracity. The jury had the right to say and decide that the testimony of such a defendant was to be believed, notwithstanding his interest, rather than that of such an accuser. We cannot say they might not have so decided had they not been told that his greater interest required them to disregard all such other considerations. By reason of that error it is possible that an innocent man has been convicted.

Some assignments of error predicated upon refusals of certain requested instructions cannot be considered because of failure of the bill of exceptions to present any exceptions.

*By the Court.*—Judgment and sentence reversed, and cause remanded for a new trial. The inspector of the Milwaukee house of correction will deliver the plaintiff in error, *Jacob Schutz,* to the sheriff of Milwaukee county, who will keep said *Schutz* in his custody until duly discharged therefrom by law.